Civil Action No.:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TYRANE ISAAC, PATRICK NICOLAS, NEIL VANRIEL AND PATRICK MARTIN,

                    Plaintiffs,

       -against-

3M COMPANY,

                    Defendant.

---

**DRUMMOND & SQUILLACE, PLLC**
**Attorneys for Plaintiffs**
TYRANE ISAAC, PATRICK NICOLAS,
NEIL VANRIEL AND PATRICK MARTIN
**175-61 Hillside Avenue, Suite 205**
**Jamaica, New York 11432**
**(718) 298-5050**

---

Stephen Drummond
JoAnn Squillace
Drummond & Squillace, PLLC
175-61 Hillside Avenue, Suite 205
Jamaica, New York 11432
Telephone: (718) 298-5050
Facsimile: (718) 298-5554
sdrummond@dswinlaw.com
Jsquillace@dswinlaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____ x

**TYRANE ISAAC,**
**PATRICK NICOLAS,**
**NIEL VANRIEL,**
**PATRICK MARTIN**

       Plaintiffs,

   v.

**3M COMPANY,**

       Defendant.

_____ x

CASE NO.
COMPLAINT FOR DAMAGES AND
DEMAND FOR JURY TRIAL

1. Design Defect- Negligence
2. Design Defect- Strict Liability
3. Failure to Warn- Negligence
4. Breach of Express Warranty
5. Breach of Implied Warranties
6. Fraud and Deceit
7. Fraudulent Misrepresentation
8. Fraudulent Concealment
9. Negligent Misrepresentation
10. Punitive damages

## I.      **COMPLAINT**

Plaintiffs TYRANE ISAAC, PATRICK NICOLAS, NIEL VANRIEL AND PATRICK MARTIN, (hereinafter, 'Plaintiffs"), by and through the undersigned counsels, bring this Complaint seeking judgment against Defendant 3M COMPANY (hereinafter referred to as "Defendant", "3M" or "3M/Aearo") for personal injuries incurred while in training and/or on active military duty, resulting from Defendant's defective and unreasonably dangerous product to wit, the Dual-ended Combat Arms™ earplugs  (Version 2 CAEv.2)(hereinafter, "Dual-ended Combat Arms™ earplugs").   At all times herein mentioned and relevant hereto, the Dual-ended Combat Arms™ earplugs were manufactured, constructed, created, assembled, designed, formulated, invented, made, tested, packaged, labeled, produced, advertised, distributed, marketed, promoted and sold by Defendant.

## II.      **INTRODUCTION**

1.      Plaintiffs who are United States Armed Forces Veterans, bring this suit to recover damages arising from personal injuries they sustained while in training and/or on active military duty domestically/CONUS and/or abroad/OCONUS.   Plaintiffs were issued and used Defendant's dangerously defective Dual-ended Combat Arms™ earplugs during their respective Active Duty United States Armed Forces training, tank firing, weapon firing, other live fire training, vehicle maintenance, military equipment/machine repairs and/or during other United States Armed Forces military training and/or combat exercise domestically and/or abroad.   Defendant sold the Dual-ended Combat Arms™ earplugs to the United States military for more than a decade without the United States military and/or Plaintiffs having any knowledge of the defect(s) with the Defendant's Dual-ended Combat Arms™ earplugs and Defendant further failed to warn and/or adequately

warn the United States military/Armed Forces and/or Plaintiffs of/about the defect(s). Defendant's Dual-ended Combat Arms™ earplugs were standard issue to/in the United States Armed Forces and in/to certain branch of the United States military, including the branches in which the Plaintiffs served and/or were serving at the time the Defendant sold the Dual-ended Combat Arms™ earplugs to the United States Armed Forces/military and, in particular, between at least 2003 to at least 2014. Based upon information and belief, it is reasonable to believe that Defendant's Dual-ended Combat Arms™ earplugs more than likely may have caused thousands, if not millions, of soldiers/United States Armed Forces members to suffer significant hearing loss, tinnitus and/or additional injures related to hearing loss/tinnitus which includes, but is not limited to, pain and suffering, loss of the pleasures and enjoyment of life, diminished quality of life, mental pain and/or mental anguish and/or mental suffering.

### III.    JURISDICTION

2.     This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds the sum or value of One Hundred Fifty Thousand Dollars ($150,000.00), exclusive of interest and costs, and Plaintiffs and Defendant are citizens of different States.

3.     Personal jurisdiction over Defendant is proper because Defendant has done business and/or placed its product into the stream of commerce in the State of New York, Defendant has committed a tort in whole or in part in the State of New York, Defendant has substantial and continuing contact with the State of New York, and/or, Defendant derives substantial revenue from goods and/or services used and/or consumed within the State of New York.

4.      This Court has personal jurisdiction over the Defendant based upon Defendant's conduct in doing business within the State of New York as there are a large number of United States Armed Forces Military Bases/ Forts/Air Stations and/or other United States Armed Forces facilities including, but not limited to: Fort Drum, Fort Hamilton, Fort Totten, Fort Wadsworth, West Point Military Academy and Saratoga Springs, which Defendant has provided and/or caused it products, which includes but is not limited to the Defendant's Dual-ended Combat Arms™ earplugs, to be marketed/sold/distributed/issued/provided to and used in the State of New York.

5.      This Court has personal jurisdiction over the Defendant based upon Defendant's conduct in doing business within the State of New York as there are a large number of United States Armed Forces Services Members from all branches of the United States Military/Armed Forces, and/or New York State National Guardsmen/Guardswomen stationed and/or affiliated with United States Armed Forces Military Bases/ Forts/Air Stations and/or other United States Armed Forces facilities including, but not limited to: Fort Drum, Fort Hamilton, Fort Totten, Fort Wadsworth, West Point Military Academy and Saratoga Springs, which Defendant has provided and/or caused it products, which includes but is not limited to Defendant's Dual-ended Combat Arms™ earplugs, to be marketed/sold/distributed/issued/provided to and used in the State of New York.

6.      At all relevant times herein, in addition to other ventures, Defendant is in the business of designing, manufacturing and selling worker safety products including, but not limited to, hearing protectors and respirators, and, Defendant has intentionally and purposefully distributed and/or caused its products to be distributed in the State of New York and/or within this District.

7.      At all relevant times herein, as one of the largest companies within the United States

3

and/or North America that is engaged in the business of designing, manufacturing and selling worker safety products, Defendant has a dominant market share in virtually every safety product market, and, Defendant intentionally and purposefully distribute and/or caused its products to be distributed in the State of New York and/or within this District.

8. At all relevant times herein, Plaintiff TYRANE ISAAC'S claims arise out of Defendant's purposeful contacts with the State of New York and as a direct and proximate result of using Defendant's Dual-ended Combat Arms™ earplugs while performing his military service/duty.

9. At all relevant times herein, Plaintiff TYRANE ISAAC was assigned to the 146th Combat Support Command General Sup, Fort Totten, New York which is located within the State of New York and within the Eastern District of New York.

10. At all relevant times herein, Plaintiff TYRANE ISAAC was first diagnosed with military service-connected hearing issues at a Veterans Administration (hereinafter "VA") facility within the State of New York and/or within this District.

11. At all relevant times herein, Plaintiff PATRICK NICOLAS's claims arise out of Defendant's purposeful contacts with the State of New York and as a direct and proximate result of using Defendant's Dual-ended Combat Arms™ earplugs while performing his military service/duty.

12. At all relevant times herein, Plaintiff PATRICK NICOLAS was assigned to the Company B (-) 642D SPT BN (WPH1BO) Hanger A, Ronkonkoma, New York Support Command General Sup., Fort Totten, New York which is located in the State of New York and within the Eastern District of New York.

13. At all relevant times herein, Plaintiff PATRICK NICOLAS was first diagnosed

with military service hearing issues at a Veterans Administration (hereinafter "VA") facility within the State of New York and/or within this District.

14.     At all relevant times herein, Plaintiff PATRICK NIEL VANRIEL's claims arise out of Defendant's purposeful contacts with the State of New York and as a direct and proximate result of using Defendant's Dual-ended Combat Arms$^{TM}$ earplugs while performing his military service/duty.

15.     At all relevant times herein, Plaintiff NIEL VANRIEL was assigned to 146th Combat Support Command General Sup, Fort Totten, New York which is located within the State of New York and within the Eastern District of New York.

16.     At all relevant times herein, Plaintiff NIEL VANRIEL was first diagnosed with military service-connected hearing issues at a Veterans Administration (hereinafter "VA") facility within the State of New York and/or within this District.

17.     At all relevant times herein, Plaintiff PATRICK MARTIN's claims arise out of Defendant's purposeful contacts with the State of New York and as a direct and proximate result of using Defendant's Dual-ended Combat Arms$^{TM}$ earplugs while performing his military service/duty.

18.     At all relevant times herein, Plaintiff PATRICK MARTIN entered active duty in the United States Army in Brooklyn, New York.

19.     At all relevant times herein, Plaintiff PATRICK MARTIN's home of record was Queens, New York which is located within the State of New York and within the Eastern District of New York.

20.     At all relevant times herein, Plaintiff PATRICK MARTIN was first diagnosed with

5

military service-connected hearing issues on or about March 31, 2009.

## IV. **VENUE**

21.     Venue is properly laid in the Eastern District of New York under U.S.C. § 1391(c), in that one or more of the Plaintiffs herein reside within the Eastern District of New York, and/or, pursuant to 28 U.S.C. Section 1391(b) in that part of and/or a substantial amount of the events complained of herein occurred within the Eastern District of New York.

## V. **PARTIES**

22     Plaintiff TYRANE ISAAC is a United States Army Veteran, a Citizen and at all relevant times herein is a resident of the State of New York.

23.     Plaintiff PATRICK NICOLAS is a United States Army Veteran, a Citizen and at all relevant times herein is a resident of the State of New York.

24.     Plaintiff NIEL VANRIEL is a United States Army Veteran, a Citizen and at all relevant times herein is a resident of the State of New York.

25.     Plaintiff PATRICK MARTIN is a United States Veteran, a Citizen and presently a resident of the State of Maryland.

26.     Defendant is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in St. Paul Minnesota.

## VI. **JURY DEMAND**

27.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

6

## VII.   FACTUAL AND GENERAL ALLEGATIONS

28.     The following allegations, bot factual and general herein, are based upon information and belief, and based in part upon the pleadings and allegations contained in *United States ex rel Moldex-Metric, Inc. v. 3M Company*, Case No. *3:16-cv-01533-DCC (D.S.C. 2016)*, which is incorporated herein by reference, and further based in part on a number of other similar pleadings filed against the Defendant.

29.     On July 26, 2018, Defendant agreed to pay Nine Million One Hundred Thousand Dollars ($9.1 Million) to resolve allegations that it knowingly sold its Dual-ended Combat Arms™ earplugs to the United States military without disclosing defects that hampered and/or adversely affected the effectiveness of the hearing protection device.   See *United States Department of Justice, 3M Company Agrees to Pay $9.1 Million to Resolve Allegations That it Supplied the United States With Defective Dual-Ended Combat Arms Earplugs (Jul. 26, 2018), available at* [https://www.justice.gov/opa/pr/3m-company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual.](https://www.justice.gov/opa/pr/3m-company-agrees-pay-91-million-resolve-allegations-it-supplied-united-states-defective-dual.)

30.     Defendant's Dual-ended Combat Arms™ earplugs are non-linear or selective attenuation earplugs which were designed to provide soldiers with two different options for hearing attenuation depending upon how the plugs are worn.  Both sides of the dual-sided earplugs were purported to provide adequate protection for soldier's ears when word.



Dual-Ended Combat Arms™ Earplugs
- Original patented dual-protection design
- Designed to allow wearer to hear low-level sounds when the yellow side of the earplug is inserted
- High-impulse noise attenuated quickly
- Premolded triple-flange design fits most earcanals
- Comfortable and reusable
- No batteries required

Un-corded dual-ended version.
Options cord available.
NSN #: 6515-01-466-2710

31.    If worn in the "closed' or "blocked" position (olive end in), the earplugs are intended to act as a traditional earplug and to block as much sound as possible.

32.    If worn in the "open" or "unblocked" (yellow side in user's ear), the earplugs are intended to reduce loud impulse sounds, such as battlefield explosions and artillery fire, while allowing the user to hear quieter noises like commands spoken by fellow soldiers and approaching enemy combatants.

33.    Defendant's standard fitting instructions state the wearer is to grasp the earplug by the stem and insert it into the ear canal.

34.    The design of the earplug prevents a snug fit in the ear canal of the wearer -- an inherent defect about which there was no warning nor any adequate and/or proper warning.

35.    When inserted, according to Defendant's standard fitting instructions, the edge of the third flange of the non-inserted end of the earplug presses against the wearers' ear canal and folds back to its original shape -- thereby loosening the seal in their ear canals and providing little, no and/or inadequate ear/hearing protection.

36.    These earplugs were originally created by a company called Aearo Technologies (hereinafter "Aearo" or "3M/Aearo").

37.    Earplugs like 3M's Dual-ended Combat Arms$^{TM}$ earplugs are sold with a stated Noise Reduction Rating (NRR) that should accurately reflect the effectiveness of hearing protection.

38.    Noise Reduction Rating (NRR) is a unit of measurement used to determine the effectiveness of hearing protection devices in order to decrease sound exposure within a given working environment.

8

39.     Hearing protectors are classified by their potential to reduce noise in decibels (dB) -- a term used to categorize the power or density of sound.

40.     Hearing protectors must be tested and approved by the American National Standards (ANSI) in accordance with the Occupational Safety & Health Administration (OSHA).

41.     The higher the NRR number associated with a hearing protector, the greater the potential for noise reduction.

42.     Based upon information and belief, and as supported by the article by McIlwain, D. Scott et al., *Heritage of Army Audiology and the Road Ahead: The Army Hearing Program, American Journal of Public Health, Vol. 98 No. 12 (Dec. 2008),* the United States Armed Forces/Military may have purchased, at a minimum, one pair of Defendant's 3M's Dual-ended Combat Arms™ earplugs for each deployed United States Armed Forces servicemember/soldier annually who were involved in certain foreign engagements between at least the years 2003 up to and including at the least the year 2015.

43.     Defendant 3M's/Aearo's Dual-ended Combat Arms™ earplugs were sold to the United States Armed Forces/Military in the year 2003 and Defendant 3M/Aearo continued to sell same Defendant's Dual-ended Combat Arms™ earplugs directly and/or indirectly to the United States Armed Forces/Military up to and including until late 2015 when the Defendant discontinued the earplugs.

44.     Based upon information and belief, Defendant and/or the government have not directed the recall of Defendant's defective earplugs and, as such, same defective earplugs could very well be in continued use by soldiers and/or by others to present date.

9

### A.     HISTORY OF TESTING OF DEFENDANT'S 3M's/Aearo's DUAL-ENDED COMBAT ARMS™ EARPLUGS

#### 1.     JANUARY 2000 TESTING

45.     Employees from 3M/Aearo began testing Defendant's 3M's Dual-ended Combat Arms™ earplugs in approximately January 2000.

46.     Defendant 3M/Aearo chose to conduct the testing at its own laboratory rather than with/at an outside independent laboratory.

47.     Defendant 3M/Aearo's employees personally selected ten test subjects (some of whom were also employees of 3M/Aearo) to test Defendant's 3M's Dual-ended Combat Arms™ earplugs.

48.     Defendant 3M/Aearo's employees intended to test: (1) the subject's hearing without an earplug inserted; (2) the subject's hearing with the open/unblocked (yellow) end of the Defendant's 3M's Dual-ended Combat Arms™ earplugs inserted; and (3) the subject's hearing with the closed/blocked (olive) end of the Defendant's 3M's Dual-ended Combat Arms™ earplugs inserted.  This testing was designed to provide data regarding the "NRR" of Defendant's 3M's Dual-ended Combat Arms™ earplugs.

49.     Defendant 3M/Aearo's personnel monitored the results of each subject as the test was performed and was in a position to stop and could stop the test if the desired NRR results were not achieved.

50.     Eight of the ten subjects were tested using both the open and closed end of the Defendant's 3M's Dual-ended Combat Arms™ earplug.

10

51.     Testing of the eight subjects suggested an average NRR of 10.9, which was far below the adequate NRR that Defendant 3M/Aearo would and should have expected for the closed end.

52.     Defendant 3M/Aearo prematurely terminated the January 2000 testing of the closed end of Defendant's 3M's Dual-ended Combat Arms™ earplug.

53.     Defendant 3M/Aearo's personnel determined that when the closed olive end of the Defendant's 3M's Dual-ended Combat Arms™ earplug was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open yellow end would press against the wearer's ear and fold backwards.  When the inward pressure on Defendant's 3M's Dual-ended Combat Arms™ earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen, often imperceptibly to the wearer and/or without the wearer becoming aware that the earplug became loose.

54.     The symmetrical nature of Defendant's 3M's Dual-ended Combat Arms™ earplug prevents a snug fit whether worn either "open" or "closed" according to the Defendant's standard fitting instructions.

55.     Defendant 3M/Aearo's personnel determined that a snug fit of Defendant's 3M's Dual-ended Combat Arms™ earplug requires the flanges on the opposite non-inserted end of the Defendant's earplug to be folded back prior to insertion.

56.     Defendant 3M/Aearo's personnel decided not to test the closed end of the Defendant's 3M/Aearo's Dual-ended Combat Arms™ earplug for two of the ten subjects because the results were well below the intended and desired NRR.

11

57.     Defendant 3M/Aearo completed testing of all ten subjects with the open end of the Defendant's 3M's Dual-ended Combat Arms™ earplug to obtain a facially invalid -2 NRR as a "0" NRR which Defendant 3M/Aearo has displayed on its packaging since its launch.

58.     Defendant 3M/Aearo falsely touts the "0" NRR as a benefit of using Defendant's 3M Dual-ended Combat Arms™ earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection.

59.     Defendant 3M/Aearo's 3M Dual-ended Combat Arms™ earplug -2 NRR actually amplifies sound thereby exposing the wearer to harm/injury which includes, but is not limited to: tinnitus, hearing loss and/or diminished hearing.

60.     Defendant 3M/Aearo knew and/or had reasons to know that Defendant's 3M's Dual-ended Combat Arms™ earplugs'-2 NRR actually amplifies sound -- thereby exposing the wearer to harm/injury which includes, but is not limited to: tinnitus, hearing loss and/or diminished hearing.

## 2.     **FEBRUARY 2000 TESTING**

61.     Upon identifying the fit issue, Defendant 3M/Aearo re-tested the olive closed end of Defendant's 3M's Dual-ended Combat Arms™ earplug in February 2000 using different fitting instructions.

62.     When re-testing the closed end, Defendant 3M/Aearo's personnel folded back the yellow flanges on the open end of the 3M's Dual-ended Combat Arms™ earplug prior to insertion.

63.     Using this "modified" fitting procedure, Defendant 3M/Aearo achieved a "22" NRR on the closed end of Defendant's 3M's Dual-ended Combat Arms™ earplug.

64.     Defendant 3M/Aearo however never properly warned United States Armed Forces Service Members and/or Armed Forces Servicemen, included the Plaintiffs herein, that the only

12

potential way to achieve this purported NRR was to modify Defendant's 3M's Dual-ended Combat Arms™ earplug by folding the yellow flanges on the opposite end.

65.     The yellow open end of Defendant 3M's Dual-ended Combat Arms™ earplug was not re-tested using the 'modified" fitting procedure.

## B.     DEFENDANT'S REPRESENTATIONS AND OMISSIONS

66.     Since 2003, Defendant 3M/Aearo has been awarded multiple Indefinite-Quantity Contracts ("IQC") from the United States Armed Forces/Military in response to Requests for Production ("RFP").

67.     From 2003 to on or about the year 2012, Defendant 3M/Aearo was the exclusive supplier of the 3M Dual-ended Combat Arms™ earplug and/or these type of earplugs to the United States Armed Forces/Military.

68.     Defendant 3M/Aearo was aware, knew of and/or had reasons to know of the design defects alleged herein, and as alleged in the pleadings and allegations contained in *United States ex rel Moldex-Metric, Inc. v. 3M Company, Case No. 3:16-cv-01533-DCC (D.S.C. 2016),* as early as the year 2000.

69.     The design defects of Defendant 3M/Aearo's Dual-ended Combat Arms™ earplugs were known to the Defendant many/several years before Defendant 3M/Aearo became the exclusive provider of the earplugs to the United States Armed Forces/Military.

70.     Defendant 3M/Aearo knew and/or had reasons to know at the time it bid for the initial IQC that Defendant's Dual-ended Combat Arms™ earplugs had dangerous design defects as they would not adequately protect the users, including the Plaintiffs, from loud sounds and did not adequately warn of the defects or adequately warn how to wear the earplugs.

13

71.     Defendant 3M/Aearo responded to the United Armed Forces'/Military's Requests for Proposal ("RFP") with express certifications that it had complied with the Salient Characteristics of the Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202.

72.     Defendant 3M/Aearo knew and/or had reasons to know at the time it made its certifications/representations, that Defendant's Dual-ended Combat Arms™ earplugs did not comply with the MPID.

73.     Defendant 3M/Aearo knew and/or had reasons to know that the design defects of Defendant's Dual-ended Combat Arms™ earplugs could cause the earplugs to loosen in the wearer's ear, imperceptibly to the wearer, and even trained audiologists visually observing a wearer -- thereby permitting damaging sounds to enter the ear canal by travelling around the outside of the earplug while the user and/or audiologist incorrectly believes that the earplug is working as intended and as represented and warranted by the Defendant.

74.     The pertinent Salient Characteristics set forth in the MPID, which were uniform across all RFPs, in relevant part, are as follows:

> 2.1.1  Ear plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield.
>
> 2.2.2.  The sound attenuation of both ends of the ear plugs shall be tested in accordance with ANSI S3.19.
>
> 2.4   **Workmanship**. **The ear plugs shall be free from all defects that detract from their appearance or impair their serviceability**.
>
> 2.5   **Instructions**.   Illustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit.
>
> Solicitation No. SP0200-06-R-402 at 41-42, *emphasis added.*

14

75.    The Environmental Protection Agency ("EPA") has also promulgated regulations pursuant to the Noise Control Act, 42 U.S.C. § 4901, et seq., that governs the testing and attendant labeling of hearing protective devices like Defendant 3M/Aearo's Dual-ended Combat Arms™ earplugs.  Specifically, 40 C.F.R. § 211.206-1 states in relevant part that:

> The value of sound attenuation to be used in the calculation of the Noise Reduction Rating must be determined according to the "Method of the Measurement of Real-Ear Protection of Hearing Protectors and Physical Attenuation of Earmuffs." This standard is approved as the American National Standards Institute Standard (ANSI-STD) S3.19-1974).

76.    Additionally, 40 C.F.R. § 211.204-4(e) of the EPA regulations requires that certain "supporting information" must accompany hearing protection devices sold in the United States:

> The following minimum supporting information must accompany the device in a manner that insures its availability to the prospective user.  In the case of bulk packaging and dispensing, such supporting information must be affixed to the bulk container or dispenser in the same manner as the label, and in a readily visible location … Instructions as to the proper insertion or placement of the device. (Emphasis added).

77.    Defendant 3M/Aearo knowingly and intentionally used the deliberately flawed re-test of the closed end of Defendant's earplugs to sell Defendant's Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military with the representation that they possess a "22" NRR in the closed position.

78.    Defendant includes standard instructions for "proper use" of the earplugs in the packaging for the earplugs as required by the EPA, Noise Control Act and the MPID.

79.    Defendant's standard instructions for "proper use" of Defendant's Dual-ended Combat Arms™ earplugs do not instruct wearers, including the Plaintiffs, to fold back the flanges of the opposite end before inserting the plug into the user's ear.

15

80. Defendant's standard instructions as to "proper use" of its Dual-ended Combat Arms™ earplugs improperly, incorrectly and/or inadequately instruct the wearers/users, including the Plaintiffs herein, to simply insert the earplugs into the ear canal.

81. In order to achieve the necessary "22" NRR, the users/wearers, including the Plaintiffs, would have to fold back the flanges on the open/unblocked end of Defendant's Dual-ended Combat Arms™ earplugs before inserting the close/blocked end of the Defendant's Dual-ended Combat Arms™ earplugs into their ears.

82. Defendant 3M/Aearo knew and/or had reasons to know that in order to achieve the necessary "22" NRR, the users/wearers, including the Plaintiffs, would have to fold back the flanges on the open/unblocked end of Defendant's Dual-ended Combat Arms™ earplugs before inserting the close/blocked end of the Defendant's Dual-ended Combat Arms™ earplugs into their ears.

83. Defendant 3M/Aearo did not inform the users/wearers, including the Plaintiffs, that in order for them to achieve the necessary "22" NRR, the users/wearers including the Plaintiffs, would have to fold back the flanges on the open/unblocked end of Defendant's Dual-ended Combat Arms™ earplugs before inserting the close/blocked end of the Defendant's Dual-ended Combat Arms™ earplugs into their ears.

84. By failing to instruct wearers/users, including the Plaintiffs, of the correct and/or proper manner to use its Dual-ended Combat Arms™ earplugs by folding back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the ear plug into their ears, (which was necessary to achieve "22" NRR), Defendant 3M/Aearo falsely overstates the amount of hearing protection provided by the closed end of Defendant's Dual-ended Combat Arms™ earplugs.

16

85. By failing to instruct wearers/users, including the Plaintiffs, of the correct and/or proper manner to use its Dual-ended Combat Arms™ earplugs by folding back the flanges on the open/unblocked end of the plug before inserting the closed/blocked end of the ear plug into their ears, (which was necessary to achieve "22" NRR), Defendant 3M/Aearo misled the users/wearers included the Plaintiffs of the amount of hearing protection provided by the closed end of the Defendant's Dual-ended Combat Arms™ earplugs.

86. Defendant 3M's/Aearo's packaging and marketing of such earplugs with such a labeled NRR of "22" thereby misleads the wearers/users, including the Plaintiffs, and has likely caused thousands of United States Armed Forces/Military Servicemembers/soldiers to suffer significant hearing loss and/or tinnitus in addition to exposing millions more to the risk caused by Defendant 3M's/Aearo's defective Dual-ended Combat Arms™ earplugs.

87. Despite knowing that its flawed testing involved steps to manipulate the fit of its earplug, Defendant 3M's/Aearo's standard instructions for use of the earplugs do not instruct, and never instructed, the wearers/users including the Plaintiffs to fold back the flanges on the open end of the Defendant's Dual-ended Combat Arms™ earplugs before inserting the closed end of the Defendant's Dual-ended Combat Arms™ earplugs into their ears (which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem).

88. Defendant 3M's/Aearo's instructions instead have provided standard fitting instructions for inserting Defendant's Dual-ended Combat Arms™ earplugs on both ends which are facially inadequate.

89. Prior to selling Defendant's Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military, Defendant 3M/Aearo was aware, knew and had reasons to know that the testing procedures and fitting instructions that Defendant engaged in relative to the

17

effectiveness of Defendant 3M/Aearo's Dual-ended Combat Arms™ earplugs, were intentionally unlawfully manipulated to obtain the NRRs it wanted on both ends of the Defendant's Dual-ended Combat Arms™ earplugs.

90.     Despite knowing that its flawed testing involved steps to manipulate the fit of its earplug and that its standard instructions for use of the earplugs do not instruct, and never instructed, the wearers/users including the Plaintiffs to fold back the flanges on the open end of the Defendant's Dual-ended Combat Arms™ earplugs before inserting the closed end of the Defendant's Dual-ended Combat Arms™ earplugs into their ears (which is necessary to achieve the "22" NRR and avoid the defect associated with the short stem), Defendant sold its Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military for more than ten years without disclosing the design defect in its Dual-ended Combat Arms™ earplugs.

91.     Plaintiffs reserve the right to supplement these facts and/or allegations after discovery.

## C.     PLAINTIFF TYRANE ISAAC

92.     Plaintiff TYRANE ISAAC, as stated in his DD214, first entered Active Duty in the United States Army on October 9, 1997 and was discharged from the United States Army on October 8, 2001.

93.     At the time Plaintiff TYRANE ISAAC originally entered the United States Army, same Plaintiff did not have any hearing loss and/or tinnitus.

94.     Based upon information and belief, Plaintiff TYRANE ISAAC would not be eligible for active duty military service had Plaintiff suffered from hearing loss and/or tinnitus.

95.     Plaintiff TYRANE ISAAC, as stated in his DD214, re-entered active duty military service in the United States Army on October 6, 2004 and was discharged from the Army on December 16, 2005.

96.     At the time Plaintiff TYRANE ISAAC re-entered active duty military service in the U.S. Army on October 6, 2004, same Plaintiff did not have any hearing loss and/or tinnitus.

97.     Based upon information and belief, Plaintiff TYRANE ISAAC would not be have been eligible to re-enter and serve on active duty in the United States Army if same Plaintiff had and/or was suffering from hearing loss and/or tinnitus.

98.     Plaintiff TYRANE ISAAC, as stated in his DD21, was deployed on Active Duty in the United States Army to Kuwait from November of 2004 to December of 2005.

99.     Plaintiff TYRANE ISAAC's Military Occupational Specialty, as stated in his DD214, while deployed to Kuwait was to fire and repair 27M20 MLRS as a 92A20 Automated Logistician.

100.    At the time of Plaintiff TYRANE ISAAC'S deployment, and during his pre-deployment training, the Defendant's Dual-ended Combat Arms™ earplugs were standard issue to members of the United States Army/Armed Forces, including to Plaintiff TYRANE ISAAC.

101.    The Defendant's Dual-ended Combat Arms™ earplugs were provided to Plaintiff TYRANE ISAAC while same Plaintiff was serving on active duty in the United States Army.

102.    The Defendant's Dual-ended Combat Arms™ earplugs were provided/issued to Plaintiff TYRANE ISAAC for a single use while same Plaintiff was deployed and during same Plaintiff's pre-deployment training.

103.    Plaintiff TYRANE ISAAC used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

19

104.    Plaintiff TYRANE ISAAC used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army at Fort Dix, New Jersey; while at Fort Totten, New York, and, while deployed to Kuwait while repairing and firing weapons and/or equipment while on active duty in the United States Army.

105.    Plaintiff TYRANE ISAAC was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

106.    Plaintiff TYRANE ISAAC was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while repairing and/or firing weapons and/or equipment while on active duty in the United States Army.

107.    Plaintiff TYRANE ISAAC was first evaluated for hearing issues by the United States Veteran Administration in New York within the Eastern District of New York on or about November 21, 2019 and, on or about February 20, 2020, the   United States Veteran's Administration informed Plaintiff that he was suffering hearing issues and/or tinnitus which was related to his military service.

108.    Plaintiff TYRANE ISAAC's military service-connected hearing issues/tinnitus is causally related to and/or are proximately caused by his wearing and use of Defendant's Dual-ended Combat Arms™ earplugs while he was on active duty military service.

### D.    PLAINTIFF PATRICK NICOLAS

109.    Plaintiff PATRICK NICOLAS, as stated in his DD214, first entered active duty in the United States Marine Corps on October 16, 1996 and was discharged from the United States Marine Corps on February 2, 2006.

20

110.     At the time Plaintiff PATRICK NICOLAS entered active duty military service in the United States Marine Corps, same Plaintiff did not have any hearing loss and/or tinnitus.

111.     At the time Plaintiff PATRICK NICOLAS entered active duty military service in the U.S. Marine Corps on or about October Army on October 6, 1996, same Plaintiff did not have any hearing loss and/or tinnitus.

112.     Based upon information and belief, Plaintiff PATRICK NICOLAS would not have been eligible for active duty military service had same Plaintiff suffered and/or was suffering from hearing loss and/or tinnitus.

113.     During the course of Plaintiff PATRICK NICOLAS' active duty service in the United States Marines, particularly during the years of 2003 to up and included the  February 2, 2006, the date of same Plaintiff's discharge from active duty military service in the United States Marine Corps, Defendant's Dual-ended Combat Arms$^{TM}$ earplugs were standard issue protective gear/equipment to same Plaintiff and other armed forces service members.

114.     During the course of Plaintiff PATRICK NICOLAS' active duty service in the United States Marines, particularly during the years of 2003 to up and included the  February 2, 2006, the date of same Plaintiff's discharge from active duty military service in the United States Marine Corps, Defendant's Dual-ended Combat Arms$^{TM}$ earplugs were standard issue protective gear/equipment to same Plaintiff and other armed forces service members and Plaintiff used Defendant's Dual-ended Combat Arms$^{TM}$ earplugs as a protective hearing equipment/gear.

115.     Plaintiff PATRICK NICOLAS, as stated in his DD214, was deployed on Active Duty in the United States Marine Corps to Iraq from on/or about March of 2004 to September of 2004.

21

116. At the time of Plaintiff PATRICK NICOLAS' deployment and during his pre-deployment training, Defendant's Dual-ended Combat Arms™ earplugs were standard issue to members of the United States Marine Corps/Armed Forces, including to Plaintiff PATRICK NICOLAS.

117. Plaintiff PATRICK NICOLAS' Military Occupational Specialty, as stated in his DD214, while deployed to Iraq was Helicopter Airframe Mechanic A/UH-1.

118. At the time of Plaintiff PATRICK NICOLAS' deployment and during his pre-deployment training to Iraq, Defendant's Dual-ended Combat Arms™ earplugs were standard issue to members of the United States Army/Armed Forces, including to Plaintiff PATRICK NICOLAS.

119. Defendant's Dual-ended Combat Arms™ earplugs were provided to Plaintiff PATRICK NICOLAS while same Plaintiff was serving on active duty in the United States Marine Corps.

120. Defendant's Dual-ended Combat Arms™ earplugs were provided/issued to Plaintiff PATRICK NICOLAS for a single use while same Plaintiff was deployed to Iraq and during same Plaintiff's pre-deployment training.

121. Plaintiff PATRICK NICOLAS used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Marine Corps.

122 Plaintiff PATRICK NICOLAS used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Marine Corps at HQ SADN MAG-39 Camp Pendleton, California, and, while deployed to Iraq from March of 2004 to September of 2004.

22

123.    Plaintiff PATRICK NICOLAS was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Marine Corps.

124.    Plaintiff PATRICK NICOLAS was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while repairing military helicopters nor while repairing and/or firing weapons and/or equipment while on active duty in the United States Marine Corps.

125.    Plaintiff PATRICK NICOLAS, as stated in his DD214, re-entered active duty military service in the United States Army on October 1, 2013 and was discharged on September 28, 2014.

126.    Plaintiff PATRICK NICOLAS, as stated in his DD214, was deployed to Kuwait on active duty military service in the United States Army on or about October 2013 to September 2014.

127.    Plaintiff PATRICK NICOLAS' Military Occupational Specialty, as stated in his DD214, while deployed to Kuwait and while serving on active duty in the United States Army was 15G30 ACFT Structural repair.

128.    At the time of Plaintiff PATRICK NICOLAS' deployment and during his pre-deployment training to Kuwait, Defendant's Dual-ended Combat Arms™ earplugs were standard issue to members of the United States Army/Armed Forces, including to Plaintiff PATRICK NICOLAS.

129.    Defendant's Dual-ended Combat Arms™ earplugs were provided to Plaintiff PATRICK NICOLAS while same Plaintiff was serving on active duty in the United States Army.

23

130.    Defendant's Dual-ended Combat Arms™ earplugs were provided/issued to Plaintiff PATRICK NICOLAS for a single use while same Plaintiff was deployed to Kuwait and during same Plaintiff's pre-deployment training.

131.    Plaintiff PATRICK NICOLAS used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

132.    Plaintiff PATRICK NICOLAS used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army at Co B (-1) 642 Support Battalion FC, Fort Hood, TC Texas, Co B (-) 642D; while at Support Battalion, (WPH1B0), Hangar A, Ronkonkoma, New York, and, while deployed to Kuwait from October of 2013 to September of 2014.

133.    Plaintiff PATRICK NICOLAS was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

134.    Plaintiff PATRICK NICOLAS was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while repairing military helicopters nor while repairing and/or firing weapons and/or equipment while on active duty in the United States Army.

135.    Plaintiff PATRICK NICOLAS was first evaluated for hearing issues by the United States Veteran Administration in New York within the Eastern District of New York on or about April 5, 2019 and, on or about July 29, 2019, the United States Veteran's Administration informed him that he was suffering hearing issues and/or tinnitus which was related to his military service.

24

136.    Plaintiff PATRICK NICOLAS' military service-connected hearing issues/tinnitus is causally related to and/or are proximately caused by his use of Defendant's Dual-ended Combat Arms™ earplugs while he was on active duty military service.

### E.    PLAINTIFF NIEL VANRIEL

137.    Plaintiff NIEL VANRIEL, as stated in his DD214, first entered service in the duty in the United States Army on June 10, 1996 and was discharged on March 30, 2019.

138.    At the time Plaintiff NIEL VANRIEL originally entered the United States Army, same Plaintiff did not have any hearing loss and/or tinnitus.

139.    Based upon information and belief, Plaintiff NIEL VANRIEL would not be eligible for active duty military service had Plaintiff suffered from and/or was suffering from hearing loss and/or tinnitus.

140.    During the course of Plaintiff NIEL VANRIEL'S active duty service in the United States Army, particularly during the years of 2003 up to and including to 2015 - the year in which it is believed the Defendant stopped supplying its Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military - Defendant's Dual-ended Combat Arms™ earplugs/earplugs were standard issue protective gear/equipment to same Plaintiff and other Armed Forces Servicemembers.

141.    During the course of Plaintiff NIEL VANRIEL'S active duty service in the United States Army, particularly during the years of 2003 up to and including to 2015—the year in which it is believe the Defendant stop supplying its Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military - Defendant's Dual-ended Combat Arms™ earplugs were standard issue protective gear/equipment to same Plaintiff and other Armed Forces Servicemembers and

Plaintiff NIEL VANRIEL used Defendant's Dual-ended Combat Arms™ earplugs as a protective hearing equipment/gear.

142.   Plaintiff NIEL VANRIEL, as stated in his DD214, was deployed on active duty in the United States Army from October 11, 2004 to November 20, 2005 to Kuwait.

143.   At the time of Plaintiff NIEL VANRIEL'S deployment and during his pre-deployment training, Defendant's Dual-ended Combat Arms™ earplugs were standard issue to members of the United States Army/Armed Forces, including to Plaintiff NIEL VANRIEL.

144.   Plaintiff NIEL VANRIEL's Military Occupational Specialty, as stated in his DD214, while deployed to Kuwait 92A10 was Automated Logistical/Logistician.

145.   At the time of Plaintiff NIEL VANRIEL's deployment and during his pre-deployment training to Kuwait, Defendant's Dual-ended Combat Arms™ earplugs were standard issue to members of the United States Army/Armed Forces, including to Plaintiff NIEL VANRIEL.

146.   Defendant's Dual-ended Combat Arms™ earplugs were provided to Plaintiff NIEL VANRIEL while same Plaintiff was serving on active duty in the United States Army.

147.   Defendant's Dual-ended Combat Arms™ earplugs were provided/issued to Plaintiff NIEL VANRIEL for a single use while same Plaintiff was deployed to Kuwait and during same Plaintiff's pre-deployment training.

148.   Plaintiff NIEL VANRIEL used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

149.   Plaintiff NIEL VANRIEL used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army at United States Central Command, Fort Dix, New Jersey, while at the 146th Combat Support Command

General Support, Fort Totten, New York, and, while deployed to Kuwait from October 11, 2004 to November 20, 2005.

150.    Plaintiff NIEL VANRIEL was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

151.    Plaintiff NIEL VANRIEL was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while serving as an Automated Logistical Support soldier nor while repairing and/or firing weapons and/or equipment while on active duty in the United States Army.

152.    Plaintiff NIEL VANRIEL, as stated in his DD214, was deployed to Afghanistan on active duty military service in the United States Army on or about November 6, 2010 to September 24, 2011.

153.    Plaintiff NIEL VANRIEL's Military Occupational Specialty, as stated in his DD214, while deployed to Afghanistan while serving on active duty in the United States Army was 42A30 F5 Human Resources Specialist.

154.    At the time of Plaintiff NIEL VANRIEL's deployment and during his pre-deployment training to Afghanistan, Defendant's Dual-ended Combat Arms™ earplugs were standard issue to members of the United States Army/Armed Forces, including to Plaintiff NIEL VANRIEL.

155.    Defendant's Dual-ended Combat Arms™ earplugs were provided to Plaintiff NIEL VANRIEL while same Plaintiff was serving on active duty in the United States Army.

27

156. Defendant's Dual-ended Combat Arms™ earplugs were provided/issued to Plaintiff NIEL VANRIEL for a single use while same Plaintiff was deployed to Afghanistan and during same Plaintiff's pre-deployment training.

157. Plaintiff NIEL VANRIEL used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

158. Plaintiff NIEL VANRIEL used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army Central Command, Fort Dix, New Jersey, while at the 408th Human Resources Company, Shoreham, New York, and, while deployed to Afghanistan from November 6, 2010 to September 24, 2011.

159. Plaintiff NIEL VANRIEL was never instructed to fold back the flanges on the opposite side while using and/or wearing the Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

160. Plaintiff NIEL VANRIEL was never instructed to fold back the flanges on the opposite side while using and/or wearing the Defendant's Dual-ended Combat Arms™ earplugs while serving as a Human Resources Specialist nor while repairing and/or firing weapons and/or equipment while on active duty in the United States Army.

161. Plaintiff NIEL VANRIEL was evaluated for hearing issues by the United States Veteran Administration in New York within the Eastern District of New York and, on or about March 16, 2020, the United States Veteran's Administration informed him that he was suffering hearing issues and/or tinnitus which was related to his military service.

162. Plaintiff NIEL VANRIEL's military service-connected hearing issues/tinnitus is causally related to and/or are proximately caused by his use of Defendant's Dual-ended Combat Arms™ earplugs while he was on active duty military service.

28

## F.    **PLAINTIFF PATRICK MARTIN**

163.    Plaintiff PATRICK MARTIN, as stated in his DD214, first entered Active Duty in the United States Army on May 10, 1988 and was discharged from active duty service in the United States Army on February 28, 2009.

164.    At the time Plaintiff PATRICK MARTIN originally entered the United States Army, same Plaintiff did not have any hearing loss and/or tinnitus.

165.    Based upon information and belief, Plaintiff PATRICK MARTIN would not be eligible for active duty military service had Plaintiff suffered from hearing loss and/or tinnitus.

166.    Plaintiff PATRICK MARTIN, as stated in his DD214, served on active duty in the United States Army and was stationed in Fort Dix, New Jersey; Hawaii; Fort Meade, Maryland; Fort Huchuca; Fort Lee, Virginia; Arlington, Virginia; Thailand; Phillipines, and South Korea.

167.    Plaintiff PATRICK MARTIN's Military Occupational Specialty, as stated in his DD214, while serving on active duty in the United States Army was 92Y50 Unit Supply Specialist.

168.    At the time of Plaintiff PATRICK MARTIN's service in the United States Army, particularly from the years 1998 through February 28, 2009 — the date of Plaintiff's discharge from active duty military service and training - Defendant's Dual-ended Combat Arms™ earplugs were standard issue to members of the United States Army/Armed Forces, including to Plaintiff PATRICK MARTIN.

169.    Defendant's Dual-ended Combat Arms™ earplugs were provided to Plaintiff PATRICK MARTIN while same Plaintiff was serving on active duty in the United States Army during the periods of 2003 through and including through to February 28, 2009—the date of same Plaintiff's discharge from active duty military service.

29

170.    Defendant's Dual-ended Combat Arms™ earplugs were provided/issued to Plaintiff PATRICK MARTIN for a single use while same Plaintiff was serving on active duty in the United States Army during the periods of 1998 through and including through to February 28, 2009—the date of same Plaintiff's discharge from active duty military service.

171.    Plaintiff PATRICK MARTIN used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army during the periods of 1998 through and including through to February 28, 2009—the date of same Plaintiff's discharge from active duty military service..

172.    Plaintiff PATRICK MARTIN used Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army at Fort Meade, Maryland and while at Fort Lee, Virginia during military training and exercise, as well as, while firing weapons and/or equipment while on active duty in the United States Army.

173.    Plaintiff PATRICK MARTIN was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while in training and in the field while on active duty service in the United States Army.

174.    Plaintiff PATRICK MARTIN was never instructed to fold back the flanges on the opposite side while using and/or wearing Defendant's Dual-ended Combat Arms™ earplugs while repairing and/or firing weapons and/or equipment while on active duty in the United States Army.

175.    Plaintiff PATRICK MARTIN was evaluated for hearing issues by the United States Army prior to his Retirement Physical and on March 1, 2009, it was determined that Plaintiff PATRICK MARTIN was suffering hearing issues and/or tinnitus, including bilateral tinnitus which was related to his military service.

30

176.    Plaintiff PATRICK MARTIN's military service-connected hearing issues/tinnitus and/or bilateral tinnitus is causally related to and/or are proximately caused by his use of Defendant's Dual-ended Combat Arms™ earplugs while he was on active duty military service.

## VIII.  CAUSES OF ACTION

### PLAINTIFFS' FIRST CAUSE OF ACTION
### DESIGN DEFECT –NEGLIGENCE

177.    Plaintiffs repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "176" with the same force and effect as if set forth at length herein.

178.    At all times relevant herein and to this action, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote, provide and distribute, Defendant's Dual-ended Combat Arms™ earplugs with reasonable and care for the safety and well-being of United States Armed Forces Military members/servicemen and women, including the Plaintiffs, who were  subject to and used Defendant's Dual-ended Combat Arms™ earplugs during their individual and respective service in the United States Armed Forces/Military.

179.    Plaintiffs were a foreseeable user/wearer of Defendant's Dual-ended Combat Arms™ earplugs and Defendant knew and/or had reasons to know that same Defendant's Dual-ended Combat Arms™ earplugs would be used by United States Armed Forces Service Members/Servicemen and Servicewomen, including by Plaintiffs herein.

180.    Defendant's Dual-ended Combat Arms™ earplugs are defective in that the  design of the earplug causes them to loosen in the wearer's ear, imperceptibly and/or without the knowledge of the wearer/user, including the Plaintiffs, thereby permitting damaging sounds to

enter the ear canal by travelling around the outside of the earplug while the wearer/user/Plaintiffs incorrectly believes and is led to believe by Defendant that Defendant's Dual-ended Combat Arms™ earplugs is working in a manner as intended which includes, but is not limited to, protecting Plaintiffs from suffering damage to Plaintiffs' hearing ability, from suffering hearing loss, from suffering damage to Plaintiffs' ears, from suffering from diminished hearing and/or from suffering from tinnitus.

181.    When Defendant's Dual-ended Combat Arms™ earplugs is inserted into the ears of the user/wearer, including the Plaintiffs, according to standard fitting instructions and according to the instructions that Defendants provided to the user/wearer and to the Plaintiffs, a proper seal is not formed with the ear canal.

182.    The design defect with Defendant's Dual-ended Combat Arms™ earplugs that Defendant provided and/or caused to be provided to the United States Armed Forces Military and to the United States Armed Forces Servicemen and Servicewomen including the Plaintiffs, has the same effect when either end of Defendant's Dual-ended Combat Arms™ earplugs is inserted in the user/wearer/Plaintiffs' ears because the earplugs are symmetrical.

183.    Whichever side of Defendant's Dual-ended Combat Arms™ earplugs the user/wearer/Plaintiffs inserted in their respective ears, the design defect is such that Defendant's Dual-ended Combat Arms™ earplugs may not and did not maintain a tight seal in some wearers/users/Plaintiffs' ear canals such that dangerous sounds can and did bypass the plug altogether -- thereby posing and/or causing serious risk to the user/wearer/Plaintiffs' hearing which, at the time of use, was/is unbeknownst to the users/wearers/Plaintiffs.

184.    Upon information and belief, Defendant failed to exercise reasonable and/or due care under the circumstances and therefore breached its duty in the following ways:

32

a.      Defendant failed to design Defendant's Dual-ended Combat Arms™ earplugs in a manner which would result in a NRR of "22" when used with the closed, olive end inserted, according to the standard fitting instructions provided by the Defendant to the United States Armed Forces/Military and to the Plaintiffs;

b.      Defendant failed to properly and thoroughly test Defendant's Dual-ended Combat Arms™ earplugs;

c.      Defendant failed to properly and thoroughly analyze the data that same Defendant generated and/or caused to be generated from the testing of Defendant's Dual-ended Combat Arms™ earplugs;

d.      Defendant designed, manufactured, distributed, and sold Defendant's Dual-ended Combat Arms™ earplugs to the United States Military with the full knowledge that same would be issued to United States Armed Forces Servicemembers, which includes the Plaintiffs herein, without providing adequate warning and/or sufficient warning of the significant and dangerous risks and harm to the United States Armed Forces Servicemembers, including Plaintiffs herein, that Defendant's Dual-ended Combat Arms™ earplugs presented;

e.      Defendant designed, manufactured, distributed, and sold Defendant's Dual-ended Combat Arms™ earplugs to United States Armed Forces Service with knowledge that same was intended to be issued to the United States Armed Forces/Military Servicemembers, including the Plaintiffs herein, without providing proper and/or adequate instructions to warn the users/wearers/Plaintiffs in order for the users/wearers/Plaintiffs to avoid the harm which would occur and did occur when the users/wearers/Plaintiffs used Defendant's Dual-ended Combat Arms™ earplugs according to the standard fitting instructions provided and directed by Defendant to the United States Armed Forces/Military and to users/wearers and the Plaintiffs;

f.      Defendant failed to fulfill the standard of care required of a reasonably prudent manufacturer of hearing protection products, specifically including products such as the Defendant's Dual- ended Combat Arms™ earplugs; and

g.      Defendant negligently continued to manufacture and distribute Defendant's Dual-ended Combat Arms™ earplugs (Version 2 CAEv.2) to the United States Armed Forces/Military after Defendant knew or should have known and/or had reasons to know of the adverse effects and the foreseeable harm to the users/wearers/Plaintiffs and/or the availability of safer designs.

185.    Defendant knew, should have known and/or had reasons to know that the defective condition of Defendant's Dual-ended Combat Arms™ earplugs made it unreasonably dangerous

to the United States Armed Forces/Military Servicemembers, including to Plaintiffs herein, who used and would use Defendant's defective Dual-ended Combat Arms™ earplugs.

186.    Defendant's Dual-ended Combat Arms™ earplugs were dangerous when used by ordinary United States Armed Forces/Military Service men and women, including the Plaintiffs, who used it consistent with the manner and fashion and accordance with the instructions provided by the Defendant, and, with knowledge common to the United-State Armed Forces/Military as to the product's characteristics, intended use, purpose and common usage.

187.    Defendant knew, should have known and had reasons to know that the Defendant's defective Dual-ended Combat Arms™ earplugs were used and would be used by Plaintiffs.

188.    At the time Plaintiffs used Defendants' defective Dual-ended Combat Arms™ earplugs and at the time Defendant's same defective Dual-ended Combat Arms™ earplugs left the Defendant's possession, the Defendant's Dual-ended Combat Arms™ earplugs were defective and/or was/were in a condition which made them/it unreasonably dangerous to the ordinary United States Armed Forces/Military service member.

189.    At all times herein relevant, Plaintiffs used Defendant's Dual-ended Combat Arms™ earplugs in the manner in which they were intended and/or in a manner and/or fashion and accordance with the instructions provided by Defendant and with knowledge common to the United State Armed Forces/Military as to the product's characteristics, intended use, purpose and common usage.

190.    As the designer, developers, manufacturers, inspectors, advertisers, distributers, and/or suppliers of its Dual-ended Combat Arms™ earplugs, Defendant had superior knowledge of the Defendant's Dual-ended Combat Arms™ earplugs and, as such, owed Plaintiffs herein a duty of care.

34

191.    Defendant was negligent in its design, manufacturing, developing, marketing, distributing, selling and/or labeling of Defendant's Dual-ended Combat Arms™ earplugs.

192.    Defendant was negligent in that Defendant failed to provide proper, adequate and/or reasonable instructions as to the proper manner in which the users/wearers/Plaintiffs should use Defendant's defective Dual-ended Combat Arms™ earplugs so as to prevent the users/wearers/Plaintiffs from suffering harm when using Defendant's defective Dual-ended Combat Arms™ earplugs.

193.    Defendant was further negligent in Defendant's actions, inactions, omissions and/or misrepresentations in the design, manufacture, development, testing, instructions, labeling, marketing and/or selling of Defendant's defective Dual-ended Combat Arms™ earplugs and it was foreseeable that Defendant's conduct, actions, inactions, omission, and/or misrepresentations relative to Defendant's Dual-ended Combat Arms™ earplugs would lead to severe, permanent, and debilitating injuries to Plaintiffs.

194.    Defendant's defective Dual-ended Combat Arms™ earplugs were the proximate cause of Plaintiffs' personal injuries including, but not limited to, Plaintiffs' respective hearing loss, sensorineural hearing loss and/or tinnitus.

195.    Defendant's negligent conduct was a substantial factor in bringing about the injuries sustained by Plaintiffs because Defendant 3M designed, manufactured, tested, sold, labeled, marketed and distributed Defendant's defective Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military, and, Plaintiffs' injuries are proximately/casually related to Defendant's defective Dual-ended Combat Arms™ earplugs that Defendant sold to the United States Armed Forces/Military for use by the United States Armed Forces Service Members, including Plaintiffs herein.

35

196. As a direct and proximate result of Defendant's negligence in defectively designing the Defendant's defective Dual-ended Combat Arms™ earplugs, Plaintiffs were caused to suffer and continue to suffer serious and dangerous harm including, but not limited to, loss of hearing, sensorineural hearing loss, tinnitus, pain and suffering, mental anguish and other related and consequential damages as alleged herein.

197. **WHEREFORE,** Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees and such further relief as the Court deems proper, just and equitable.

## PLAINTIFFS' SECOND CAUSE OF ACTION
## DESIGN DEFECT –STRICT LIABILITY

198. Plaintiffs repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "197" with the same force and effect as if set forth at length herein.

199. Plaintiffs were foreseeable users/wearers of Defendant's defective Dual-ended Combat Arms™ earplugs.

200. At the times Defendant sold Defendant's defective Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military, Defendant knew, was informed and/or had reasons to know that the United States Armed Forces/Military intended to issue Defendant's defective Dual-ended Combat Arms™ earplugs to United States Armed Services Members, including Plaintiffs, as a protective gear.

201. At the times Defendant learned of and responded to the United Armed Forces/Military's requests for Proposal ("RFP"), and further expressly certified that it had complied with the Salient Characteristics of the Medical Procurement Item Description ("MPID")

36

of Solicitation No. SP0200-06-R-4202, Defendant knew, had reasons to know and was informed

that the United States Armed Forces/Military intended to issue Defendant's defective Dual-ended

Combat Arms™ earplugs to United States Armed Services Members as a protective gear.

202.    Defendant's Dual-ended Combat Arms™ earplugs that Defendant sold/distributed

to the United States Armed Forces are/were defective in that the design of the earplug causes them

to loosen in the wearers'/users'/Plaintiffs' ears which imperceptibly could not be detected and

which were issued to Plaintiffs without the wearers/users/Plaintiffs being aware of same -- thereby

permitting damaging sounds to enter the wearers'/users'/Plaintiffs' ear canal by travelling around

the outside of the earplug while the wearers/users/Plaintiffs incorrectly believe, and are led by the

Defendant to believe, that the earplug is working effectively as intended and as represented and

warranted by Defendant.

203.    Defendant knew, had reasons to know and was fully aware that the defective

condition of Defendant's defective Dual-ended Combat Arms™ earplugs made it unreasonably

dangerous to the United States Armed Forces/Military service members, which includes Plaintiffs,

who would use Defendant's Dual-ended Combat Arms™ earplugs.

204.    Defendant's Dual-ended Combat Arms™ earplugs were defective, dangerous,

hazardous and not fit/suitable for the purpose represented by Defendant when used by an ordinary

user/wearer such as the Plaintiffs, and, when used in the manner it was intended to be used and/or

when used in the fashion that the Defendant instructed directed the users/wearers/Plaintiffs to use

it.

205.    Defendant's Dual-ended Combat Arms™ earplugs were dangerous and/or

defective to an extent beyond which would be contemplated by the ordinary Plaintiff and/or the

ordinary user/wearer who purchased and/or used Defendant's Dual-ended Combat Arms™

earplugs as same allow for dangerous sounds to bypass the plug altogether -- thereby posing a serious risk to the hearing of United States Armed Forces Service Members, including the Plaintiffs, unbeknownst to them and/or without the service member/Plaintiffs' knowledge of same.

206.   At the time Defendant's Dual-ended Combat Arms™ earplugs left Defendant's possession, Defendant's Dual-ended Combat Arms™ earplugs were defective and/or were in a condition which made them unreasonably dangerous to the ordinary United States Armed Forces/Military service member, including the Plaintiffs herein, who used them.

207.   At all relevant times herein, Plaintiffs used Defendant's Dual-ended Combat Arms™ earplugs in the manner in which they were intended and/or in a manner consistent with the instructions and directions that Defendant provided/instructed Plaintiffs to use same Dual-ended Combat Arms™ earplugs.

208.   Defendant's Dual-ended Combat Arms™ earplugs were the proximate cause of Plaintiffs' hearing loss and/or tinnitus because the short-stem design of Defendant's Dual-ended Combat Arms™ earplugs allow for dangerous sounds to bypass the plug altogether -- thereby posing a serious risk to Plaintiffs' hearing unbeknownst to them and/or without the service member/Plaintiffs' knowledge of same.

209.   Defendant's conduct was a substantial factor in bringing about Plaintiffs' personal injuries because Defendant designed, tested, manufactured, sold, marketed, tested, labeled and distributed Defendant's Dual-ended Combat Arms™ earplugs that caused Plaintiffs' hearing loss and/or tinnitus herein.

210.   As a direct and proximate result of Defendant's design defect of its Dual-ended Combat Arms™ earplugs, Plaintiffs were caused to suffer, and continue to suffer, serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss,

38

tinnitus, pain and suffering and mental anguish and related and consequential damages as alleged herein.

211.  **WHEREFORE,** Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

## PLAINTIFFS' THIRD CAUSE OF ACTION
## FAILURE TO WARN - NEGLIGENCE

212.  Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "211" with the same force and effect as if set forth at length herein.

213.  At all times relevant to herein, Defendant had a duty to manufacture, design, formulate, test, package, label, produce, create, make, construct, assemble, market, advertise, promote and distribute Defendant's Dual-ended Combat Arms™ earplugs with reasonable and due care, within industry standards and/or to the standard of the intended purpose of earplugs to prevent hearing loss/tinnitus and for the well-being of United States Armed Forces/Military service men and women, including Plaintiffs, who were subject to and, in fact, used Defendant's Dual-ended Combat Arms™ earplugs during their individual and respective service in the United States Armed Forces/military.

214.  At the times Defendant sold Defendant's defective Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military, Defendant knew, was informed and/or had reasons to know that the United States Armed Forces/Military intended to issue Defendant's defective Dual-ended Combat Arms™ earplugs to United States Armed Services Members, including Plaintiffs, as a protective gear.

39

215.   At the times Defendant learned of and responded to the United Armed Forces/Military's requests for Proposal ("RFP") and further expressly certified that it had complied with the Salient Characteristics of the Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202, Defendant knew, had reasons to know and was informed that the United States Armed Forces/Military intended to issue Defendant's defective Dual-ended Combat Arms™ earplugs to United States Armed Services Members, including Plaintiffs, as a protective gear.

216.   Plaintiffs were foreseeable users/wearers of Defendant's Dual-ended Combat Arms™ earplugs.

217.   Defendant's defective Dual-ended Combat Arms™ earplugs are defective, in part, in that the design of the earplug causes them to loosen in the users'/wearers'/Plaintiffs' ear imperceptibly to the wearers/users/Plaintiffs -- thereby permitting damaging sounds to enter the ear canal by travelling around the outside of the earplug while the user incorrectly believes that the earplug is working as intended, as warranted and/or represented by Defendant.

218.   Defendant's Dual-ended Combat Arms™ earplugs were dangerous and/or defective to an extent beyond which would be contemplated by the ordinary Plaintiffs and/or the ordinary user/wearer who purchased and used Defendant's Dual-ended Combat Arms™ earplugs as they allow for dangerous sounds to bypass the plug altogether -- thereby posing a serious risk to the hearing of United States Armed Forces Service Members, including the Plaintiffs herein, unbeknownst and/or without the service member/Plaintiffs' knowledge of same.

219.   Defendant's Dual-ended Combat Arms™ earplugs contained no warnings and, in the alternative, contained inadequate/insufficient warnings and/or instructions as to the risk that Defendant's Dual-ended Combat Arms™ earplugs would allow for dangerous sounds to bypass

same earplug altogether/completely -- thereby posing a serious risk to the users/wearers/Plaintiffs' hearing unbeknownst to them and/or without the users'/wearers'/Plaintiffs' knowledge of same.

220.   The warnings, information and/or instructions that Defendant had accompanied and/or caused to accompany Defendant's Dual-ended Combat Arms™ earplugs failed to provide adequate, sufficient, proper, reasonable, appropriate and/or the necessary level of information/instruction/warning that an ordinary consumer, user, wearer such as the Plaintiffs would expect when using Defendant's defective Dual-ended Combat Arms™ earplugs in a manner reasonably foreseeable to Defendant.

221.   The warnings and/or instructions that Defendant had accompanied and/or caused to accompany Defendant's Dual-ended Combat Arms™ earplugs did not inform/warn/advise the users/wearers/Plaintiffs that Defendant's Dual-ended Combat Arms™ earplugs were/was defective.

222.   The warnings and/or instructions that Defendant had accompanied and/or caused to accompany Defendant's Dual-ended Combat Arms™ earplugs did not inform/warn/advise the users/wearers/Plaintiffs that the use of Defendant's Dual-ended Combat Arms™ earplugs as a hearing protection could lead the users/wearers/Plaintiffs to suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, pain and suffering, mental anguish and/or other related personal injuries to the users'/wearers'/Plaintiffs' ears/hearing herein.

223.   The warnings and/or instructions that Defendant had accompanied and/or caused to accompany Defendant's Dual-ended Combat Arms™ earplugs did not inform/warn/advise the users/wearers/Plaintiffs that the users/wearers/Plaintiffs would be assuming the risk of suffering serious and dangerous personal injuries and effects including, but not limited to: sensorineural

hearing loss, tinnitus, pain and suffering, mental anguish and/or other related personal injuries to the users'/wearers'/Plaintiffs' ears/hearing by using Defendant's Dual-ended Combat Arms™ earplugs as hearing protection.

224.    Had Defendant provided adequate, sufficient, proper, reasonable, appropriate and/or the necessary level of information, warning and/or advice to the ordinary consumer/user/wearer/Plaintiffs of the risk and serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, pain and suffering, mental anguish and/or other related personal injuries to the users'/wearers'/Plaintiffs' ears/hearing as a result of using Defendant's Dual-ended Combat Arms™ earplugs as hearing protection, Plaintiffs herein would not have used Defendants' Dual-ended Combat Arms™ earplugs as hearing protection.

225.    Defendant's Dual-ended Combat Arms™ earplugs were/are the proximate cause of Plaintiffs' respective hearing loss and/or tinnitus because the short-stem design of Defendant's Dual-ended Combat Arms™ earplugs allow for dangerous sounds to bypass the plug altogether - - thereby posing a serious risk to Plaintiffs' hearing unbeknownst to them and/or without the service member/Plaintiffs' knowledge of same.

226.    Defendant's conduct was/is a substantial factor in bringing about Plaintiffs' personal injuries including, bit not limited to, their respective hearing loss and/or tinnitus, because Defendant designed, tested, manufactured, sold, marketed, labeled and distributed Defendant's Dual-ended Combat Arms™ earplugs that caused Plaintiffs' hearing loss and/or tinnitus and did so without warning and/or advising Plaintiffs of the serious danger and risks to Plaintiffs' hearing and/or ears herein.

42

227.    As a direct and proximate result of Defendant's design defect of its Dual-ended Combat Arms™ earplugs, Plaintiffs were caused to suffer and continue to suffer from serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related and consequential damages as alleged herein.

228.    **WHEREFORE,** Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

**PLAINTIFFS' FOURTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

229.    Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "228" with the same force and effect as if set forth at length herein.

230.    At the times Defendant learned of and responded to the United Armed Forces/Military's Requests for Proposal ("RFP"), Defendant expressly certified, warranted, represented, affirmed and/or stated to the foreseeable users/wearers, including to Plaintiffs herein, that it had complied with the Salient Characteristics of the Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202, that same Defendant's Dual-ended Combat Arms™ earplugs were safe and effective for their intended use and purpose, that same were designed and constructed to prevent harmful sounds from bypassing the earplugs and/or that same earplugs would provide meaningful hearing protection to protect Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to, sustaining sensorineural

hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other relatd and consequential damages.

231.    Defendant further warranted, represented, affirmed and/or stated to the foreseeable users/wearers, including to Plaintiffs herein, that Defendant's Dual-ended Combat Arms™ earplugs were safe and effective for their intended use and purpose, were designed and constructed to prevent harmful sounds from bypassing the earplugs, and/or, that same earplugs would provide meaningful hearing protecting to protect Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related and consequential damages.

232.    Defendant further made public statements, in addition to its description of Defendant's Dual-ended Combat Arms™ earplugs, in which Defendant expressly warranted, represented, stated and/or affirmed, among other representations and warranties, that same Defendant's Dual-ended Combat Arms™ earplugs were safe and effective for their intended use and were designed and constructed to prevent harmful sounds from bypassing the earplugs to protect the users'/wearers', including Plaintiffs', ears/hearing.

233.    Defendant warranted, represented, stated and/or made affirmations as to the safety of Defendant's Dual-ended Combat Arms™ earplugs in one or more of the following forms:

(a) publicly made written and verbal assurances of safety;

(b) press releases and dissemination via the media, or uniform promotional information that was intended to create a demand for the Defendant's Dual-ended Combat Arms™ earplugs— which contained material misrepresentations and utterly failed to warn the users/wearers, including Plaintiffs, of the serious and dangerous personal injuries and effects including, but not limited to:

44

sensorineural hearing loss, tinnitus, pain and suffering, mental anguish and other related damages associated with the use of Defendant's Dual-ended Combat Arms™ earplugs;

(c) verbal assurances made by Defendant's consumer relations personnel about the safety and/or effectiveness of the use of Defendant's Dual-ended Combat Arms™ earplugs which downplayed and/or failed to disclose/warn/advise of the serious and dangerous personal injuries and effects including, but not limited to, sensorineural hearing loss, tinnitus, pain and suffering, mental anguish and related damages associated with the use of Defendant's Dual-ended Combat Arms™ earplugs;

(d) false and/or misleading written information and packaging supplied by Defendant to the users/wearers, including to Plaintiffs, and

(e) Defendant certified, warranted, represented, affirmed and stated to the United States Armed Forces/Military and/or to the foreseeable users/wearers, including to Plaintiffs, that it had complied with the Salient Characteristics of the Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202 and that same Defendant's Dual-ended Combat Arms™ earplugs were safe and effective for their intended use and purpose, were designed and constructed to prevent harmful sounds from bypassing the earplugs, and/or, that same earplugs would provide meaningful hearing protection to Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related and consequential damages.

234.     At the times Defendant made the foregoing express warranties and representations, Defendant knew and/or had reasons to know, and was further informed by the United States Armed Forces/Military, of the intended purposes/usage by the United States Armed Forces/Military and/or service members, including Plaintiffs, of Defendant's Dual-ended Combat Arms™

earplugs and, with full knowledge of the of the foregoing, Defendant warranted that same Defendant's Dual-ended Combat Arms™ earplugs were safe in all respects, were proper for such purpose, and/or, that by using Defendant's Dual-ended Combat Arms™ earplugs, the user/wearer including Plaintiffs would not suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and/or other related and consequential damages.

235.   Defendant drafted the documents and/or made statements upon which the within warranty claims are based and, in doing so, defined and/or established the terms of those warranties.

236.   Defendant is in possession of the documents and/or statements that defined and/or established the terms and conditions of Defendant's expressed/written warranty(ies) relative to Defendant's Dual-ended Combat Arms™ earplugs upon which the within warranty claims are based.

237.   Defendant's Dual-ended Combat Arms™ earplugs do not conform to and are different from Defendant's promises, description, warranties, statements, and/or or affirmation of facts, and were not adequately packaged, labeled, promoted, described, tested, marketed, sold and/or distributed and were further defective, dangerous, hazardous, not fit and/or unsafe for the ordinary purposes for which such earplugs are/were used.

238.   Based upon information and belief, all of the aforementioned written materials are in Defendant's possession, are known to Defendant and are incorporated herein by reference and should be produced by Defendant and be made part of the present record and/or be made part of the record once Plaintiffs are afforded the opportunity to conduct discovery.

239.   Plaintiffs   relied   upon   Defendant's   expressed,   stated   and/or   written warranties/representations/affirmations/descriptions in using Defendant's Dual-ended Combat Arms™ earplugs.

240.   As a direct and proximate result of Defendant's breach of Defendant's express warranties, Plaintiffs were caused to suffer and continue to suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related and consequential damages as alleged herein.

241.   **WHEREFORE**, Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

## PLAINTIFFS' FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTIES

242.   Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "241" with the same force and effect as if set forth at length herein.

243.   At the time Defendant marketed, sold and/or distributed Defendant's Dual-ended Combat Arms™ earplugs, Defendant knew and/or had reasons to know and was further informed by the United States Armed Forces/Military of the intended purposes/usage by the United States Armed Forces/Military and/or service members, included Plaintiffs, of Defendant's Dual-ended Combat Arms™ earplugs and, with full knowledge of the of the foregoing, Defendant impliedly warranted that same Defendant's Dual-ended Combat Arms™ earplugs were safe in all respects, were proper for such purpose and/or that, by using the Defendant's Dual-ended Combat Arms™

47

earplugs, the user/wearer including Plaintiffs would not suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering and mental anguish.

244. At the times Defendant learned of and responded to the United Armed Forces/Military's Requests for Proposal ("RFP"), Defendant expressly certified, warranted, represented, affirmed and/or stated to the foreseeable users/wearers, including to Plaintiffs herein, that it had complied with the Salient Characteristics of the Medical Procurement Item Description ("MPID") of Solicitation No. SP0200-06-R-4202, that same Defendant's Dual-ended Combat Arms™ earplugs were safe and effective for their intended use and purpose, that same were designed and constructed to prevent harmful sounds from bypassing the earplugs and/or that same earplugs would provide meaningful hearing protection to protect Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to, sustaining sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other relatd and consequential damages.

245. At the time Defendant marketed, sold, labeled, tested, described and distributed Defendant's Dual-ended Combat Arms™ earplugs, Defendant knew, had reasons to know and/or was informed by the United States Armed Forces/Military of the use for which the United States Armed Forces/Military was acquiring/purchasing Defendant's Dual-ended Combat Arms™ earplugs, and, Defendant impliedly warranted that Defendant's Dual-ended Combat Arms™ earplugs were/are fit/suitable/appropriate for the United State Armed Forces/Military's intended use and Defendant further impliedly warranted and/or warranted that Defendant's Dual-ended Combat Arms™ earplugs were/are of merchantable quality and were/are effective and safe for the United State Armed Forces/Military's intended use.

48

246.    Plaintiffs relied upon Defendant's implied warranty, in addition to relying upon Defendant's expressed, stated and/or written warranties in using Defendant's Dual-ended Combat Arms™ earplugs.

247.    Defendants knew and/or had reasons to know that Plaintiffs would rely upon Defendant's implied warranty that its Dual-ended Combat Arms™ earplugs would prevent harmful sounds from bypassing the earplugs and/or that same earplugs would provide meaningful hearing protection to protect Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages and further relied on Defendant's judgment and skills in providing, testing, labeling, marketing, describing, selling and distributing Defendant's Dual-ended Combat Arms™ earplugs to the United States Armed Forces/Military for use by its service members, including by Plaintiffs herein.

248.    Plaintiffs reasonably relied upon the Defendant's implied warranty, judgment and skills as to whether its Dual-ended Combat Arms™ earplugs were of merchantable quality, were safe, were fit for use and/or were effective for its intended use.

249.    Contrary to such implied warranties made by Defendant, Defendant's Dual-ended Combat Arms™ earplugs were defective, not of merchantable quality, not safe and/or effect for its intended use as the Defendant's Dual-ended Combat Arms™ earplugs/earplugs were, and, are defective, unreasonably dangerous, hazardous, unfit, insafe and ineffective for the ordinary purpose for which Defendant's Dual-ended Combat Arms™ earplugs were used.

250.    Defendant's Dual-ended Combat Arms™ earplugs are/were defective, are/were incapable of preventing harmful sounds from bypassing the earplugs and/or could not/cannot and did not provide meaningful hearing protection to Plaintiffs nor prevent Plaintiffs from sustaining

49

serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

251. Plaintiffs relied upon Defendant's implied, expressed, stated and/or written warranties in using Defendant's Dual-ended Combat Arms™ earplugs.

252. As a direct and proximate result of Defendant's breach of implied warranties, Plaintiffs were caused to suffer and continue to suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related and consequential damages as alleged herein.

253. **WHEREFORE**, Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

## PLAINTIFFS' SIXTH CAUSE OF ACTION
## FRAUD AND DECEIT

254. Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "253" with the same force and effect as if set forth at length herein.

255. Defendant tested its Dual-ended Combat Arms™ earplugs in January and February 2000 and those testings were designed and intended to determine whether Defendant's Dual-ended Combat Arms™ earplugs were capable of preventing harmful sounds from bypassing the earplugs and/or to determine whether same earplugs could provide meaningful hearing protection for its users/wearers, including Plaintiffs, and/or prevent the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural

50

hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

256.    The foregoing tests demonstrated that Defendant's Dual-ended Combat Arms™ earplugs allow for and/or could not prevent dangerous sounds from bypassing the earplugs and/or demonstrated that same earplugs could not and did not provide meaningful hearing protection to the users/wearers, including to Plaintiffs, nor did or do they prevent the users/wearers/Plaintiffs from sustaining serious and/or dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

257.    Defendant 3M/Aearo prematurely terminated the January 2000 testing of the closed end of Defendant's 3M's Dual-ended Combat Arms™ earplug.

258.    Defendant 3M's/Aearo's personnel determined that when the closed, olive end of the Defendant's 3M's Dual-ended Combat Arms™ earplug was inserted into the wearer's ear according to standard fitting instructions, the basal edge of the third flange of the open, yellow end would press against the wearer's ear and fold backwards.

259.    Defendant 3M/Aearo realized from the testing that when the inward pressure on the Defendant's 3M's Dual-ended Combat Arms™ earplug was released, the yellow side flanges would return to their original shape and cause the earplug to loosen, often imperceptibly to the wearer and/or without the wearer becoming aware that the earplug became loose.

260.    The symmetrical nature of Defendant's 3M's Dual-ended Combat Arms™ earplug prevents a snug fit whether worn either "open" or "closed" according to the standard fitting instructions.

51

261.    Defendant 3M's/Aearo's personnel determined that a snug fit of Defendant's 3M's Dual-ended Combat Arms™ earplug requires the flanges on the opposite, non-inserted end of the Defendant's earplug to be folded back prior to insertion.

562.    Defendant 3M's/Aearo's personnel decided not to test the closed end of the Defendant's 3M/Aearo's Dual-ended Combat Arms™ earplug for two of the ten subjects because the results were well below the intended and desired NRR.

263.    Defendant 3M/Aearo completed testing of all ten subjects with the open end of the Defendant's 3M's Dual-ended Combat Arms™ earplug to obtain a facially invalid -2 NRR as a "0" NRR which Defendant 3M/Aearo has displayed on its packaging since its launch.

264.    Defendant 3M/Aearo falsely made material representations that the "0" NRR as a benefit of using Defendant's 3M Dual-ended Combat Arms™ earplug by suggesting that soldiers will be able to hear their fellow soldiers and enemies while still providing some protection.

265.    Defendant 3M/Aearo's 3M Dual-ended Combat Arms™ earplug's -2 NRR actually amplifies sound thereby exposing the wearer to harm which includes, but is not limited to: tinnitus, hearing loss and/or diminished hearing.

266.    Defendant 3M/Aearo knew and/or had reasons to know that Defendant's 3M's Dual-ended Combat Arms™ earplugs' -2 NRR actually amplifies sound thereby exposing the wearer to harm which includes, but is not limited to: tinnitus, hearing loss and/or diminished hearing.

267.    Upon identifying the fit issue, Defendant 3M/Aearo re-tested the olive, closed end of Defendant 3M's Dual-ended Combat Arms™ earplugs in February 2000 using different fitting instructions.

52

268.    When testing the closed end, Defendant 3M's/Aearo's personnel folded back the yellow flanges on the open end of the 3M's Dual-ended Combat Arms™ earplug prior to insertion.

269.    Using this "modified" fitting procedure, Defendant 3M/Aearo achieved a "22" NRR on the closed end of Defendant 3M's Dual-ended Combat Arms™ earplug.

270.    Defendant 3M/Aearo however never properly warned the United States Armed Forces Service Members and/or Armed Forces Servicemen, included Plaintiffs, that the only potential way to achieve this purported NRR was to modify Defendant 3M's Dual-ended Combat Arms™ earplugs by folding the yellow flanges on the opposite end.

271.    The yellow, open end of Defendant 3M's Dual-ended Combat Arms™ earplug was not re-tested using the "modified" fitting procedure.

272.    Defendant intentionally conducted improper testing on Defendant's Dual-ended Combat Arms™ earplugs.

273.    Defendant intentionally conducted the improper testing of Defendant's Dual-ended Combat Arms™ earplugs in order to achieve a materially false result with the intent of helping same Defendant deceive the United States Armed Forces and its service members, including Plaintiffs, into believing that Defendant's Dual-ended Combat Arms™ earplugs could provide meaningful hearing protection for its users/wearers, including for Plaintiffs, and/or that they could prevent the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

274.    As a result of Defendant's intentionally unlawful and improper conduct and improper testing of Defendant's Dual-ended Combat Arms™ earplugs, Defendant blatantly and intentionally distributed false information which overstated the amount of hearing protection

53

Defendant's Dual-ended Combat Arms™ earplugs would provide to its users/wearers, including to Plaintiffs herein.

275.    Armed with its unlawful, improper and deceitful testing results of Defendant's Dual-ended Combat Arms™ earplugs, Defendant materially and intentionally misrepresented to the United States Armed Forces/Military and to its service members that its Dual-ended Combat Arms™ earplugs were/are capable of preventing harmful sounds from bypassing the earplugs; and/or, further falsely represented that same earplugs could provide meaningful hearing protection for its users/wearers, including Plaintiffs, and/or that they could prevent the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

276.    At the time Defendant made the foregoing material representations to the United States Armed Forces/Military and its service members, including Plaintiffs, Defendant knew and/or had reasons to know that same representations were/are false as Defendant knew and/or had reasons to know that its own testing revealed that itsDual-ended Combat Arms™ earplugs allowed, and/or could not prevent, dangerous sounds from bypassing the earplugs and/or that same earplugs could not and did not provide meaningful hearing protection to the users/wearers, including Plaintiffs nor could they prevent the users/wearers like Plaintiffs from sustaining serious and/or dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

277.    Defendant intentionally made these false representations with the intent to have the United States Armed Forces/Military and its service members, including Plaintiffs, rely upon same Defendant's false and misleading information as to the capabilities of Defendant's Dual-ended

54

Combat Arms™ earplugs to provide meaningful hearing protection for its users/wearers, including Plaintiffs, and/or their capabilities in preventing the wearer/users, including Plaintiffs, from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

278.   The United States Armed Forces/Military and its service members, including Plaintiffs, relied upon Defendant's false and misleading information as to the capabilities of Defendant's Dual-ended Combat Arms™ earplugs to provide meaningful hearing protection for its users/wearers, including Plaintiffs, and/or their capabilities in preventing the wearer/users, including Plaintiffs, from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

279.   The information that Defendant distributed to Plaintiffs and/or caused to be distributed to Plaintiffs contained material representations of facts and/or omissions relative to the hearing protection provided by and capabilities of Defendant's Dual-ended Combat Arms™ earplugs in providing meaningful hearing protection for its users/wearers, including Plaintiffs, and/or their capabilities to prevent the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

280.   Defendant's material representations about the hearing protection provided by and capabilities of Defendant's Dual-ended Combat Arms™ earplugs, upon which Plaintiffs relied in using same, were/are false and/or were/are misleading to Plaintiffs.

281. Defendant intentionally suppressed and/or manipulated its testing results in order to support Defendant's intent of falsely overstating the capabilities of Defendant's Dual-ended Combat Arms™ earplugs and their ability to provide meaningful hearing protection for its users/wearers, including Plaintiffs, and/or to prevent the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

282. Defendant intended in making and made the foregoing false and/or misleading representations/affirmations/warranties/descriptions in order to induce the users/wearers such as Plaintiffs to rely upon them.

283. Plaintiffs relied upon Defendant's false and/or misleading representations/affirmations/warranties/descriptions as to the capabilities of Defendant's Dual-ended Combat Arms™ earplugs and their ability to provide meaningful hearing protection for its users/wearers, including Plaintiffs, and/or to prevent the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

284. Defendant had a duty and was under an obligation to be truthful and to inform the users/wears, including Plaintiffs, of the true and correct/accurate capability of Defendant's Dual-ended Combat Arms™ earplugs to provide meaningful hearing protection for its users/wearers, including Plaintiffs herein.

285. Defendant had a duty and was under an obligation to disseminate truthful information and to not deceive the public and the foreseeable users/wearers, including Plaintiffs,

56

of the capability of Defendant's Dual-ended Combat Arms™ earplugs to provide meaningful hearing protection.

286.    It    was    the    intent    of    Defendant,    in    making    false representations/affirmations/warranties/descriptions, and in manipulating its testing of its Dual-ended Combat Arms™ earplugs, to intentionally withhold information as to the inadequacy, ineffectiveness, danger, hazard, unsafety and/or unfitness of Defendant's Dual-ended Combat Arms™ earplugs from the United States Armed Forces/Military and its services members, including Plaintiffs, and from the public at large and to have the United States Armed Forces/Military and its services members including Plaintiffs, and the public at large, rely upon Defendant's foregoing false representations/warranties/descriptions/affirmations and omissions in order to have the United States Armed Forces/Military, to have Plaintiffs and to have the public at large purchase, use, recommend and/or continue to use Defendant's Dual-ended Combat Arms™ earplugs.

287.    Defendant    made    the    aforementioned    false representations/affirmations/warranties/descriptions and/or omissions with the intent of convincing the United States Armed Forces/Military and its service members including Plaintiffs, and the public at large, that Defendant's Dual-ended Combat Arms™ earplugs were fit and safe for use and/or that Defendant's Dual-ended Combat Arms™ earplugs were capable of providing meaningful hearing protection for its users/wearers, including Plaintiffs, and/or were capable of preventing the wearer/users, including Plaintiffs, from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

288. Defendant made all of the foregoing false representations/affirmations/warranties/descriptions and/or omissions knowing them to be false, inaccurate, incorrect and/or misleading, and/or, with the pretense of actual knowledge when defendant did not have the actual knowledge to make such representations/affirmations/warranties/descriptions and/or recklessly made same without any good faith or regard for the truth and/or for the safety of the public at large including Plaintiffs herein.

289. That the foregoing false representations/affirmations/warranties/descriptions and/or omissions made by Defendant were made with the intent to deceive and defraud Plaintiffs and were made to induce Plaintiffs to rely upon same which caused Plaintiffs, in relying upon same, to use, rely on, purchase, request, dispense and/or recommend the use of Defendant's Dual-ended Combat Arms™ earplugs as they believed and were led to believe by Defendant that Defendant's Defendant's Dual-ended Combat Arms™ earplugs were safe, were fit for use and were capable of providing meaningful hearing protection for its users/wearers, including Plaintiffs, and/or were able to prevent the wearer/users including Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

290. Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous, hazardous and seriously defective design/nature of Defendant's Dual-ended Combat Arms™ earplugs and their danger to the safety of the public at large including to Plaintiffs herein.

291. Plaintiffs did in fact rely upon Defendant's representations/affirmations/warranties/descriptions and omissions and, in reliance thereupon,

58

Plaintiffs believed that Defendant's Dual-ended Combat Arms™ earplugs were fit and safe for use and/or that Defendant's Dual-ended Combat Arms™ earplugs were capable of providing meaningful hearing protection for its users/wearers including Plaintiffs, and/or, were able to prevent the wearer/users including Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, pain and suffering, diminished hearing, mental anguish and other related damages and, in further reliance thereupon, Plaintiffs did, in fact, use Defendant's Dual-ended Combat Arms™ earplugs for hearing protection.

292.    That    at    the    time    Defendant    made    the    foregoing representations/affirmations/warranties/descriptions and/or omissions, Plaintiffs did not believe them to be false, inaccurate or misleading and Plaintiffs did not know the truth as to the dangerous and defective design of Defendant's earplugs nor about the serious safety concerns regarding the use of same nor that Defendant had manipulated its testing of its Dual-ended Combat Arms™ earplugs.

293.    That    at    the    time    Defendant    made    the    foregoing representations/affirmations/warranties/descriptions and/or omissions, Plaintiffs did not  know that Defendant's Dual-ended Combat Arms™ earplugs were incapable of providing meaningful hearing protection for its users/wearers, including Plaintiffs, nor that they were incapable of preventing the wearer/users including Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

294.    That Plaintiffs did not discover the truth, nor discovered that Defendant had misled Plaintiffs, nor could Plaintiffs with due and reasonable diligence have discovered the truth as to

the defective design and ineffectiveness of Defendant's earplugs, or as to Defendant's manipulation of Defendant's testing of Defendant's Dual-ended Combat Arms™ earplugs.

295.    That Plaintiffs did not discover the truth, nor discovered that Defendant had misled Plaintiffs, nor could Plaintiffs with due and reasonable diligence have discovered the truth that Defendant's Dual-ended Combat Arms™ earplugs were incapable of providing meaningful hearing protection for its users/wearers, including Plaintiffs, and/or were incapable of preventing the wearer/users including Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages, prior to Plaintiffs using Defendant's Dual-ended Combat Arms™ earplugs herein, and, had Defendant informed/advised/warned Plaintiffs of the foregoing danger in using and defective design of its earplugs Plaintiffs would not have used and/or relied upon using Defendant's Dual-ended Combat Arms™ earplugs for hearing protection.

296.    That Defendant's aforementioned conduct, acts, omissions, representations, affirmations, testing, warranties and descriptions about its earplugs constitutes fraud and deceit and was committed and/or perpetrated by Defendant willfully, wantonly, with total disregard for the truth, recklessly and/or with deliberate indifference to and with reckless disregard for the health, safety and/or the well-being of the public, of the United States Armed Forces members/service members and of Plaintiffs herein.

297.    As a direct and proximate result of Defendant's acts, misrepresentations, false representations and/or omissions, Plaintiffs were caused to suffer and continue to suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing

loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages as alleged herein.

298.   **WHEREFORE**, Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

## PLAINTIFFS' SEVENTH CAUSE OF ACTION
### FRAUDULENT MISREPRESENTATION

299.   Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "298" with the same force and effect as if set forth at length herein.

300.   Defendant falsely and fraudulently represented to Plaintiffs, to the United States Armed Forces/Military and to Its servicemembers, which includes Plaintiffs, and to the public at large that Defendant's Dual-ended Combat Arms™ earplugs had been properly tested and were free from all design defects and/or were fit and safe for use, were capable of providing meaningful hearing protection for its users/wearers including Plaintiffs and/or could prevent the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages and, based upon Defendant's false and fraudulent representations, Plaintiffs did in fact use Defendant's Dual-ended Combat Arms™ earplugs for hearing protection.

301.   Defendant intentionally and fraudulently manipulated its testing of its Dual-ended Combat Arms™ earplugs which resulted in false and/or misleading NRRs and in improper fitting/using/wearing instructions which Defendant intentionally and fraudulently distributed

61

and/or caused to be distributed to the United States Armed Forces/Military, to Its servicemembers, to Plaintiffs and/or to the public at large.

302.    Defendant intentionally failed to disclose to the United States Armed Forces/Military and Its servicemembers, which includes Plaintiffs, and to the public at large about the design defect of Defendant's Dual-ended Combat Arms™ earplugs which rendered same earplugs unfit and unsafe for their intended use, rendered them incapable of providing meaningful hearing protection for its users/wearers including Plaintiffs, and/or rendered them incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages, and, because Defendant failed to disclose the foregoing, Plaintiffs did in fact use Defendant's Dual-ended Combat Arms™ earplugs for hearing protection.

303.    The foregoing representations/affirmations/warranties/descriptions and/or omissions of/by Defendant were in fact false and were made by Defendant with the intent of deceiving the United States Armed Forces/Military and/or Its service members, including Plaintiffs herein.

304.    At the times Defendant made the foregoing representations/affirmations/warranties/descriptions and/or omissions, Defendant did so knowing same to be false and/or knowing same to be material information that the United States Armed Forces/Military, and/or Its service members including Plaintiffs, would need in order to make an informed decision as to whether Defendant's Dual-ended Combat Arms™ earplugs were fit and safe for their intended use, whether they were capable of providing meaningful hearing protection for its users/wearers including Plaintiffs and/or whether they were capable of preventing the

wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

305.    Defendant made the foregoing representations/affirmations/warranties/descriptions and/or omissions knowing that they were false and/or knowing that same is/was necessary material information to be conveyed to the United States Armed Forces/Military, to Its service members including Plaintiffs and to the public at large but, instead, Defendant willfully, wantonly and recklessly      disregarded      the      truth      in      making      the      foregoing      false representations/affirmations/warranties/descriptions    and    intentionally    withheld    material information from the United States Armed Forces/Military, from Its service members including Plaintiffs and from the public at large.

306.    These    representations/affirmations/warranties/descriptions    were    made    by Defendant with the intent of defrauding and deceiving the United States Armed Forces/Military and Its service members, including Plaintiffs, and/or defrauding and deceiving the public in general, in order for the United States Armed Forces/Military and Its service members, including Plaintiffs, and/or the public in general to use, recommend and/or purchase Defendant's Dual-ended Combat Arms™ earplugs.

307.    Defendant    intentional    making    of    the    foregoing representations/affirmations/warranties/descriptions about its earplugs herein was callous, reckless, willful, wanton, fraudulent and were made with depraved indifference to, reckless disregard for and deliberate indifference to the health, safety and welfare of Plaintiffs, of the United States Armed Forces/Military and Its service members including Plaintiffs and/or of the public in general and at large.

308.    At    the    times    Defendant    made    the    foregoing representations/affirmations/warranties/descriptions, and at the times Plaintiffs used Defendant's Dual-ended Combat Arms™ earplugs, Plaintiffs were unaware of the falsity of Defendant's representations/affirmations/warranties/descriptions and reasonably believed them to be true and accurate and, further, reasonabye believed that Defendant's Dual-ended Combat Arms™ earplugs were fit and safe for their intended use, were capable of providing meaningful hearing protection for its users/wearers including Plaintiffs and/or were capable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

309.    At    the    times    Defendant    made    the    foregoing    material representations/affirmations/warranties/descriptions and/or omissions as to the design defect of Defendant's Dual-ended Combat Arms™ earplugs, and at the times Plaintiffs used Defendant's earplugs,  Plaintiffs were unaware that Defendant had intentionally failed to disclose material information as to the safety and capabilities of Defendant's earplugs and, as such, Plaintiffs reasonably believed that Defendant's Dual-ended Combat Arms™ earplugs were fit and safe for their intended use, were capable of providing meaningful hearing protection for its users/wearers including Plaintiffs and/or were capable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

310.    Plaintiffs relied upon Defendant's misrepresentations that Defendant's Dual-ended Combat Arms™  earplugs were fit and safe for their intended use, were capable of providing

meaningful hearing protection for its users/wearers including Plaintiffs and/or were capable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages, and, Plaintiffs in relying on same, used Defendant's earplugs herein.

311.   Plaintiffs further relied upon Defendant's material representations/affirmations/warranties/descriptions and/or omissions in that Plaintiffs believed that, if Defendant knew and/or had reasons to know of a design defect and/or adverse testing results of its Dual-ended Combat Arms™ earplugs, Defendant would have, should have and was under an obligation to disclose same to Plaintiffs, to the United States Armed Forces/Military and Its service members including Plaintiffs, and, to the public at large.

312.   Defendant intentionally did not disclose the foregoing to Plaintiffs, to the United States Armed Forces/Military and/or Its service members nor to the public at large and, as Defendant did not disclose the foregoing, Plaintiffs reasonably believed that Defendant's Dual-ended Combat Arms™ earplugs were fit and safe for their intended use, were capable of providing meaningful hearing protection for its users/wearers including Plaintiffs and/or were capable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages, and, Plaintiffs in relying on same, used Defendant's earplugs herein.

313.   Defendant, knew, had reasons to know, was aware and/or should have been aware that its Dual-ended Combat Arms™ earplugs had not been sufficiently tested, were defective in nature and/or design, were unfit and/or unsafe for use, were not fit for use for their intended

purpose, posed a danger and/or risk to one's hearing/ears, were incapable of providing meaningful hearing protection for its users/wearers including Plaintiffs, were incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages, and/or, lacked adequate, proper and/or sufficient instructions/labeling/warnings.

314. Defendant knew, had reasons to know, was aware and/or should have been aware that its Dual-ended Combat Arms™ earplugs had a potential to, could and/or would cause severe, grievous, serious and/or dangerous personal injuries including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages to Plaintiffs, to members of the United States Armed Forces including Plaintiffs, and, to the public at large.

315. Defendant intentionally distributed, caused to be distributed, sold, and/or caused to be sold, Defendant's defective and dangerous Dual-ended Combat Arms™ earplugs to the general public, to/in the public market place, to/in the public forum, to Plaintiffs and to the United States Armed Forces/Military and Its service members including Plaintiffs and, in so doing, acted fraudulently, wantonly, maliciously, intentionally, callously, with total disregard for/deliberate indifference to/reckless disregard for the health, safety and well-being of Plaintiffs, of the United States Armed Forces/Military and Its service members including Plaintiffs, and, the public at large.

316. As a direct and proximate result of Defendant's acts, misrepresentations, false representations/affirmations/warranties/descriptions and/or omissions, Plaintiffs were caused to suffer and continue to suffer serious and dangerous personal injuries and effects including, but not

limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages as alleged herein.

317.    **WHEREFORE**, Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

## PLAINTIFFS' EIGHTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT

318.    Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "317" with the same force and effect as if set forth at length herein.

319.    At all times relevant herein, Defendant misrepresented to Plaintiffs, to the United States Armed Forces/Military and Its service members including Plaintiffs, and to the general public, the safety, efficacy, capability, fitness and/or effectiveness of Defendant's Dual-ended Combat Arms$^{TM}$ earplugs as a hearing protective device.

320.    At all relevant times herein, Defendant knew, had reasons to know, was aware and/or should have known that the foregoing representations/affirmations/warranties/descriptions and/or omissions made by Defendant to Plaintiffs, to the United States Armed Forces/Military and Its service members including Plaintiffs, and, to the general public were false.

321.    At all times relevant herein Defendant's knew and/or had reasons to know that its Dual-ended Combat Arms$^{TM}$ earplugs were defective, dangerous, defective in design, unfit, unsafe and/or unfit/unsafe for their intended use and purpose and, despite knowing of same, Defendant did not disclose same to Plaintiffs, to the United States Armed Forces/Military and Its Service Members including the Plaintiffs, nor, to the general public.

322.    At all relevant times herein, Defendant knew, had reasons to know, was aware and/or should have known that the foregoing representations/affirmations/warranties/descriptions and/or omissions Defendant made to Plaintiffs, to the United States Armed Forces/Military and Its service members including the Plaintiffs and to the general public, were materially false as Defendant knew unbeknownst to Plaintiffs, to the United State Armed Forces/Military and Its members and to the general public, that its Dual-ended Combat Arms™ earplugs were defective, dangerous, hazardous, unfit, unsafe, unfit for their intended use, incapable of providing meaningful hearing protection for its users/wearers/Plaintiffs and/or incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

323.    Defendant intentionally, wantonly and fraudulently concealed and omitted the following material information from Plaintiffs, from the United State Armed Forces/Military and Its members, and, from the general public that:

(a)    testing of the Defendant's Dual-ended Combat Arms™ earplugs was deliberately and intentionally flawed and/or manipulated by Defendant;

(b)    the amount of hearing protection provided by the Defendant's Dual-ended Combat Arms™ earplugs was insufficient to provide meaningful and/or effective hearing protection;

(c)    Defendant's Dual-ended Combat Arms™ earplugs were unfit, unsafe for its intended use, incapable of providing meaningful hearing protection for its users/wearers, including the Plaintiffs and/or incapable of preventing the wearer/users, including the Plaintiffs from sustaining serious and dangerous personal injuries and effects, including but not limited to sensorineural hearing loss, tinnitus, pain and suffering and mental anguish and damages;

(d)    the Defendant was knew, had reasons to know, aware and/or had reason to be aware that Defendant's Dual-ended Combat Arms™ earplugs were defective and/or had design defects;

(e)  the Defendant's Dual-ended Combat Arms™ earplugs was defective and that by user same for hearing protection, would expose Plaintiffs, the United States Armed Forces/Military, Its Service Members including Plaintiffs and to the general public to serious and dangerous personal injuries and effects, including but not limited to sensorineural hearing loss, tinnitus, pain and suffering and mental anguish and damages; and/or

(f)  Defendant negligently manufactured, defectively manufactured, negligently designed, defectively designed, and/or improperly manufactured, created and/or designed Defendant's Dual-ended Combat Arms™ earplugs and/or that by using same as for hearing protection would expose Plaintiffs, the United States Armed Forces/Military, Its Service Members including Plaintiffs and to the general public to serious and dangerous personal injuries and effects including but not limited to: sensorineural hearing loss, tinnitus, pain and suffering and mental anguish and damages.

324.  Defendant had an obligation, a duty and a responsibility to disclose to Plaintiff's, to the United States Armed Forces/Military, to Its Service Members including the Plaintiffs and to the general public, all material, relevant and/or pertinent information that Defendant knew of, had reasons to know of, was aware of and/or should have known as to all of the foregoing information about Defendant's Dual-ended Combat Arms™ earplugs.

325.  Defendant had exclusive and/or sole access to the relevant, pertinent and/or material facts, information and condition of its defective, dangerous, hazardous, unsafe and unfit Dual-ended Combat Arms™ earplugs but intentionally withheld and failed to disclose same to Plaintiffs, to the United States Armed Forces/Military, to Its Service Members including Plaintiffs, and, to the general public and, specifically withheld and failed to disclose that Defendant's earplugs were unfit, unsafe, defective, dangerous, hazardous, unfit for their intended use, incapable of providing meaningful hearing protection for its users/wearers/Plaintiffs and/or incapable of preventing the wearer/users,/Plaintiffs from sustaining serious and dangerous personal injuries and

effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

326.    Defendant's concealment and/or omissions of material, relevant, pertinent and/or vital information concerning the safety, capability, effectiveness, efficacy, fitness and/or the capability of Defendant's Dual-ended Combat Arms™ earplugs was done by Defendant to purposefully, willfully, wantonly, intentionally and/or recklessly to mislead Plaintiffs, the United States Armed Forces/Military, Its Service Members including the Plaintiffs, and, the general public.

327.    Defendant's concealment and/or omissions of material, relevant, pertinent and/or vital information concerning the safety, capability, effectiveness, efficacy, fitness and/or the capability of Defendant's Dual-ended Combat Arms™ earplugs was done by Defendant to purposefully, willfully, wantonly, intentionally and/or recklessly to mislead Plaintiffs, the United States Armed Forces/Military, Its Service Members including the Plaintiffs, and, the general public to use/purchase Defendant's Dual-ended Combat Arms™ earplugs as a protective hearing device.

328.    Defendant knew, had reasons to know, was aware and/or should have known that Plaintiffs, the United States Armed Forces/Military, Its Service Members including the Plaintiffs, and, the general public had no means and/or ways of finding out the truth and/or of ascertaining/determining the truth behind Defendant's misrepresentations, omissions and/or concealment of material information relative to the the safety, capability, effectiveness, efficacy, fitness and/or the capability of Defendant's Dual-ended Combat Arms™ earplugs.

329.    Defendant took and/or embarked upon affirmative steps to ensure that Plaintiffs, the United States Armed Forces/Military, Its Service Members including the Plaintiffs,and, the general public would not uncover Defendant's misrepresentations, omissions and/or concealment

of material information relative to the safety, capability, effectiveness, efficacy, fitness and/or the capability of Defendant's Dual-ended Combat Arms™ earplugs.

330.   Plaintiffs reasonably relied upon the information, misrepresentations and omissions from/made by Defendant which Defendant intentionally, fraudulently, purposefully, and/or negligently did not disclose/state and/or misrepresented.

331.   As a direct and proximate result of Defendant's acts, misrepresentations, false representations/affirmations/warranties/descriptions and/or omissions, Plaintiffs were caused to suffer and continue to suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages as alleged herein.

332.   **WHEREFORE**, Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

**PLAINTIFFS' NINTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**

333.   Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "332" with the same force and effect as if set forth at length herein.

334.   Defendant had and/or owed a duty to report accurately and truthfully, the effectiveness, capabilities, safety, efficacy, testing results and/or fitness, and/or lack thereof, of Defendant's Dual-ended Combat Arms™ earplugs to Plaintiffs, to the United States Armed Forces/Military and Its Service Members, including Plaintiffs, and to the general public in

71

marketing, labeling, distributing and selling its Dual-ended Combat Arms™ earplugs to be used as a protective hearing device.

335.    Defendant had a duty to exercise reasonable and due care in reporting and to report, advise and/or warn about the effectiveness, capabilities, safety, efficacy, testing results and/or fitness, and/or lack thereof, of Defendant's Dual-ended Combat Arms™ earplugs to Plaintiffs, to the United States Armed Forces/Military and Its Service Members, including Plaintiffs, and to the general public in marketing, labeling, distributing and selling its Dual-ended Combat Arms™ earplugs to be used as a protective hearing device.

336.    Defendant further had a duty to Plaintiffs, to the United States Armed Forces/Military and Its Service Members, including Plaintiffs, and to the general public to exercise reasonable care in the manufacturing, testing, design, sale, quality assurance, quality control, distribution, testing, labeling, marketing and selling of its Dual-ended Combat Arms™ earplugs and its distribution of same earplugs into interstate commerce, and, further had a duty to accurately and truthfully state the capabilities/safety/fitness of same earplugs and the potential for danger or harm to the user/wearer, including Plaintiffs, when using Defendant's Dual-ended Combat Arms™ earplugs as a protective hearing device.

337.    Defendant was aware, had reasons to be aware, knew and/or had reasons to know/should have known that its Dual-ended Combat Arms™ earplugs were unfit, defective, dangerous, hazardous, unsafe for their intended use, incapable of providing meaningful hearing protection for its users/wearers including Plaintiffs, and/or, were incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

338.    Through the exercise of reasonable care and due diligence and, in fulfilling its duty under the circumstances that Defendant owed to Plaintiffs, to the United States Armed Forces/Military and Its Service Members, including Plaintiffs, and to the general public, Defendant should have and would have discovered that its Dual-ended Combat Arms™ earplugs were unfit, defective, dangerous, hazardous, unsafe for their intended use, incapable of providing meaningful hearing protection for its users/wearers including Plaintiffs, and/or, incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

339.    Defendant breached its duty to Plaintiffs, failed to use reasonable care and further failed to tell/inform/advise/warn Plaintiffs, the United States Armed Forces/Military and Its Service Members, including Plaintiffs, and the general public that Defendant's Dual-ended Combat Arms™ earplugs were unfit, defective, dangerous, hazardous, unsafe for their intended use, incapable of providing meaningful hearing protection for its users/wearers including Plaintiffs and/or incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

340.    Defendant further breached its duty to Plaintiffs, failed to use reasonable care and further failed to provide correct, appropriate, adequate, sufficient, true and/or meaningful instructions/labeling/warnings/test results to Plaintiffs, to the United States Armed Forces/Military and Its Service Members, including Plaintiffs, and to the general public as to the proper manner in which to use Defendant's Dual-ended Combat Arms™ earplugs as an protective hearing device in order to avoid sustaining serious and dangerous personal injuries and effects including, but not

73

limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

341.    Defendant breached all of its foregoing duties to Plaintiffs, to the United States Armed Forces/Military and Its Service Members, including Plaintiffs, and/or to the general public by representing that its Dual-ended Combat Arms™ earplugs were fit and were safe for their intended use as a protective hearing device.

342.    Defendant breached all of its foregoing duties to Plaintiffs, to the United States Armed Forces/Military and Its Service Members, including Plaintiffs, and/or to the general public by failing to represent/advise/warn/inform Plaintiffs that Defendant's Dual-ended Combat Arms™ earplugs were unfit, defective, dangerous, hazardous, unsafe for their intended use, incapable of providing meaningful hearing protection for its users/wearers including Plaintiffs, and/or, incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

343.    As a direct and proximate result of Defendant's acts, misrepresentations, false representations, omissions, negligence and/or breach of its duties, Plaintiffs were caused to suffer and continue to suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages as alleged herein.

344.    **WHEREFORE**, Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

## PLAINTIFFS' TENTH CAUSE OF ACTION
## PUNITIVE DAMAGES

345.    Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "344" with the same force and effect as if set forth at length herein.

346.    Defendant has acted willfully, wantonly, maliciously, callously, egregiously and with total and reckless disregard for/deliberate indifference to the health, safety and well-being of Plaintiffs, of the United States Armed Forces/Military and Its Service Members including Plaintiffs, and, of the public at large.

347.    Defendant placed Defendant's own interest in financial gain/profit/income above and beyond Defendant's duty of care and obligation to Plaintiffs, to the United States Armed Forces/Military and Its Service Member including Plaintiffs, and, to the public at large and, in doing so, Defendant acted willfully, wantonly, maliciously, callously, egregiously and with total and reckless disregard for/deliberate indifference to the health, safety and well-being of Plaintiffs, of the United States Armed Forces/Military and Its Service Members, and, of the public at large.

348.    Defendant has acted willfully, wantonly, maliciously, callously, egregiously and with total and reckless disregard for/deliberate indifference to the health, safety and well-being of Plaintiffs, of the United States Armed Forces/Military and Its Service Members, and, of the public at large in one or more of the following ways:

   a.     By failing to disclose material facts regarding the design defects and dangerous condition of Defendant's Dual-ended Combat Arms$^{TM}$ earplugs in that same earplugs were unfit, unsafe for their intended use, incapable of providing meaningful hearing protection for its users/wearers including Plaintiffs, and/or, incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, pain and suffering and mental anguish and damages;

75

b.     By failing to disclose the truth and/or making intentionally false representations with the purpose, intent, goal and objective of deceiving Plaintiffs, the United States Armed Forces/Military and Its Service Members including Plaintiffs, and, the public at large so that Plaintiffs, the United States Armed Forces/Military and Its Service Members would use, purchase and/or reply upon Defendant's Dual-ended Combat Arms$^{TM}$ earplugs as a protective hearing device while subjecting Plaintiffs to serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, pain and suffering and mental anguish and damages in order for Defendant to fraudulently, deceitfully, dishonestly and/or unlawfully make money;

c.     By falsely representing the dangerous and/or serious health and/or safety concerns in using Defendant's Dual-ended Combat Arms$^{TM}$ earplugs that exposed and/or caused Plaintiffs serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering and mental anguish and damages in order for Defendant to fraudulently, deceitfully, dishonestly and/or unlawfully make money;

d.     By intentionally, deliberately and with self-serving financial intent and desire, failing to inform/advise/label/warn/disclose to Plaintiffs, to the United States Armed Forces/Military and Its Service Members including Plaintiffs, and, to the public at large material and/or relevant information that Defendant was under a duty and/or obligation to disclose; this information includes, but is not limited to, disclosing/informing/advising/warning that Defendant's Dual-ended Combat Arms$^{TM}$ earplugs were unfit, defective, dangerous, hazardous, unsafe for their intended use, incapable of providing meaningful hearing protection for its users/wearers, including Plaintiffs, and/or, incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages.

349.     **WHEREFORE**, Plaintiffs demand judgment against Defendant and request compensatory damages, consequential damages and punitive damages, together with interest, costs of suit, attorneys' fees, and such further relief as the Court deems proper, just and equitable.

## IX.     **DEFENDANT'S CONDUCT TOLLED THE STATUTE OF LIMITATIONS**

350.     Plaintiffs, repeat and re-allege each and every allegation set forth above in paragraphs of the complaint numbered "1" to "349" with the same force and effect as if set forth at length herein.

76

351.   Plaintiffs timely filed the within claim/lawsuit/complaint within the applicable limitations period of when Plaintiffs' first learned and/or had reasonable and/or a good faith belief that Defendant's Dual-ended Combat Arms™ earplugs caused and/or were/are the proximate cause of Plaintiffs' injuries herein.

352.   Plaintiffs could not, by the exercise of reasonable and/or due diligence, have discovered that it was as a result of Plaintiffs using Defendant's Dual-ended Combat Arms™ earplugs as a protective hearing device that caused and/or was the proximate cause of Plaintiffs' injuries herein.

353.   At the times Plaintiffs first experienced their respective injuries, Plaintiffs did not know that it was as a result of using Defendant's Dual-ended Combat Arms™ earplugs as a protective hearing device that caused and/or proximately caused Plaintiffs injuries herein.

354.   The cause and/or proximate cause of Plaintiffs' injuries were unknown to Plaintiffs and Plaintiffs did not suspect nor have reasons to suspect that it was as a result of Plaintiffs using of Defendant's Dual-ended Combat Arms™ earplugs as a protective hearing device that caused and/or proximately caused Plaintiffs' injuries herein.

355.   Plaintiffs did not become aware, did not have reasons to become aware, did not know nor have reasons to know, and, Plaintiffs did not, would not and could not discover through due diligence that it was the tortious, fraudulent, negligent, misrepresentation, design defects, unfitness and/or inability of Defendant's Dual-ended Combat Arms™ earplugs that caused and/or proximately caused Plaintiffs' injuries until less than the applicable limitations period prior to the filing of the within action.

356.   Furthermore, the running of any Statute of Limitations has been tolled by reasons of Defendant's conduct including Defendant's fraudulent concealment of Defendant's conduct that gave rise to Plaintiffs' claims herein.

357.   Defendant, through its affirmative misrepresentations, omissions and affirmative steps same Defendant embarked upon, intentionally and recklessly hid, concealed and/or precluded Plaintiffs from learning of and/or discovering that Plaintiffs injuries herein were caused and/or proximately caused by Defendant's defective Dual-ended Combat Arms$^{TM}$ earplugs.

358.   As a result of Defendant's actions/conduct/omissions, Plaintiffs were unaware, could not have become aware, did not know and could not reasonably know/discover/learn through the exercise of reasonable/due diligence, that Plaintiffs had been exposed to the defects and risks alleged herein which caused and/or proximately caused Plaintiffs to suffer and continue to suffer serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and other related damages as a result of using Defendant's defective Dual-ended Combat Arms$^{TM}$ earplugs as a protective hearing device.

359.   That at all relevant times herein mentioned, Plaintiffs were prevented from discovering sooner/earlier, the defectiveness, hazardous, danger, unfitness and/or safety/health concerns/risks of/about using Defendant's Dual-ended Combat Arms$^{TM}$ earplugs because Defendant herein misrepresented and continued to misrepresent the defective/dangerous/hazardous/unfit/unsafe nature of its Dual-ended Combat Arms$^{TM}$ earplugs including, but not limited to, Defendant's intentionally false, misleading and/or deceptive affirmations, statements, descriptions, testing results, misrepresentations and omissions claiming that Defendant's Dual-ended Combat Arms$^{TM}$ earplugs:

a.   Were fit and safe for their intended use as a protective hearing device; and/or

b.   Defendant failed to represent/warn/advise/disclose/inform Plaintiffs that Defendant's Dual-ended Combat Arms™ earplugs were unfit, defective, dangerous, hazardous, unsafe for their intended use, incapable of providing meaningful hearing protection for its users/wearers including Plaintiffs, and/or, incapable of preventing the wearer/users/Plaintiffs from sustaining serious and dangerous personal injuries and effects including, but not limited to: sensorineural hearing loss, tinnitus, diminished hearing, pain and suffering, mental anguish and damages.

360.   Based upon information and belief, even after Defendant settled the case *United States ex rel Moldex-Metric, Inc. v. 3M Company, Case No. 3:16-cv-01533-DCC (D.S.C. 2016),* Defendant did so on the condition that same Defendant had not and did not admit any liability and/or wrongdoing as to any of the allegations outlined in that action including, but not limited to the allegations that: Defendant defectively designed its Dual-ended Combat Arms™ earplugs, that same earplugs were not safe as a protective hearing device and that Defendant engaged in deliberate efforts to conceal the foregoing from Plaintiffs, from the United States Armed Forces/Military and Its Service Members and from the general public.

361.   Additionally, pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. § 3936, the periods of Plaintiffs' respective military service are not applicable and may not be included in the computing of any Statute of Limitations periods herein.

## X.   **JURY DEMAND**

Plaintiffs hereby demand a trial by jury as to all claims in this action.

## XI.   **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, each individually, pray as follows:

i.   That process issue according to law;

ii.   That Defendant be duly served and cited to appear and answer herein, and that after due proceedings are had, that there be judgment in favor of Plaintiffs and against

Defendant for the damages as set forth below, along with court costs, pre-judgment and post-judgment interest at the legal rate;

iii.   That each Plaintiff be compensated for his respective pain and suffering (past and future);

iv.   That each Plaintiff be compensated for his respective wage loss (past and future);

v.   That each Plaintiff be compensated for his respective loss of earnings and/or loss of earning capacity, opportunities and/or potential;

vi.   That each Plaintiff be compensated for his respective medical expenses (past and future);

vii.   That each Plaintiff be compensated for his respective loss of enjoyment of life (past and future);

viii.   That each Plaintiff be compensated for his respective mental anguish and distress (past and future);

ix.   That each be Plaintiff compensated for his respective disfigurement (past and future);

x.   That each Plaintiff be compensated for his respective physical impairment (past and future);

xi.   That this Court award Plaintiffs' their Attorneys' fees;

xii.   That this Court award punitive or exemplary damages in such amounts as may be proven at trial; and

xiii.   For such other relief as to which Plaintiffs may be justly entitled.

Dated:      Jamaica, New York
            March 18, 2020

                            Yours, etc.,


                            /s/ Stephen L. Drummond
                            STEPHEN L. DRUMMOND (SLD 7359)
                            Drummond & Squillace, PLLC
                            Attorneys for Plaintiffs
                            TYRANE ISAAC, PATRICK NICOLAS, NIEL
                            VANRIEL & PATRICK MARTIN
                            175-61 Hillside Avenue, Suite 205
                            Jamaica, New York 11432
                            Telephone: (718) 298-5050
                            Facsimile: (718) 298-5050
                            sdrummond@dswinlaw.com


                            /s/ JoAnn Squillace
                            JOANN SQUILLACE (JS 4217)
                            Drummond & Squillace, PLLC
                            Attorneys for Plaintiffs
                            TYRANE ISAAC, PATRICK NICOLAS, NIEL
                            VANRIEL & PATRICK MARTIN
                            175-61 Hillside Avenue, Suite 205
                            Jamaica, New York 11432
                            Telephone: (718) 298-5050
                            Facsimile: (718) 298-5050
                            jsqillace@dswinlaw.com

## ATTORNEYS' VERIFICATION

STEPHEN L. DRUMMOND & JOANN SQUILLACE, attorneys duly admitted to practice before the Courts of the State of New York and before the Eastern and Southern Districts of New York of the United States District Court, affirm the following to be true under the penalties of perjury:

1. We are attorneys at **DRUMMOND & SQUILLACE, PLLC**, attorneys of record for Plaintiffs **TYRANE ISAAC, PATRICK NICOLAS, NIEL VANRIEL AND PATRICK MARTIN.**

2. We have read the annexed **SUMMONS IN A CIVIL ACTION AND COMPLAINT** and **JURY DEMAND** and know the contents thereof, and the same are true to our knowledge, except those matters therein which are stated to be alleged upon information and belief, and as to those matters we believe them to be true. Our individual and respective beliefs, as to those matters therein not stated upon knowledge, is based upon facts, records and other pertinent information contained in our files and discussions with Plaintiffs.

3. This verification is made by us because Plaintiffs are not presently in the County wherein we maintain our offices.

DATED:      Jamaica, New York
            March 18, 2020


                            /s/ Stephen L. Drummond


                            /s/ JoAnn Squillace

Civil Action No.:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TYRANE ISAAC, PATRICK NICOLAS, NEIL VANRIEL AND PATRICK MARTIN,

          Plaintiffs,

   -against-

3M COMPANY,

          Defendant.

---

**DRUMMOND & SQUILLACE, PLLC**
**Attorneys for Plaintiffs**
TYRANE ISAAC, PATRICK NICOLAS,
NEIL VANRIEL AND PATRICK MARTIN
**175-61 Hillside Avenue, Suite 205**
**Jamaica, New York 11432**
**(718) 298-5050**